Yolica Y. M. STONE, Plaintiff-Appellee,

v.

D. A. & S. OIL WELL SERVICING,
INC., Defendant-Appellant.

No. 78–1459.

United States Court of Appeals,
Tenth Circuit.

Argued Jan. 24, 1980.

Decided June 23, 1980.

Leonard L. Pickering, Albuquerque, N.
M. (Wayne E. Bingham and J. Carter Clary,
Albuquerque, N. M., with him on brief), of
Pickering & Bingham, Albuquerque, N. M.,
for defendant-appellant.

Ann Yalman, Santa Fe, N. M. (Donald D. Becker, Albuquerque, N. M., with her on brief), for plaintiff-appellee.

Before SETH, Chief Judge, and HOLLO-WAY and McKAY, Circuit Judges.

McKAY, Circuit Judge.

In this Title VII action, the district court found that plaintiff Stone had been denied employment by defendant D. A. & S. Oil Well Servicing, Inc. (Company), "for the sole reason that she was a woman." Record, vol. 2, at 283. On appeal, the Company challenges the finding of discrimination and, in the alternative, the measure of backpay awarded Stone.

Stone sought employment as a "floorhand," a laborer's position traditionally filled by men in the New Mexico oil industry. Floorhand positions at the Company are subject to high turnover, with openings developing nearly every day. As a result, it is likely that a willing, qualified applicant who reports for work daily at 6:00 a.m. will quickly secure permanent, full-time employment.

On September 29, 1975, Stone visited the Hobbs, New Mexico, yard of the Company looking for such a job. Company dispatcher Compton, who generally hired floorhands, told her she was too late for that day's hiring. He somewhat reluctantly detailed the hiring procedures and suggested that Stone call him that evening to learn of the next day's possibilities. However, Compton also took the unusual step of referring Stone to Company Vice President Bliss. According to Stone's testimony, Bliss "told me that he would rather not see a woman work out in the field, that I would be better off at home in the kitchen raising babies, that as long as he was working for D. A. & S. he would never ever see a woman working in the field." Record, vol. 2, at 56. Bliss concluded the interview by throwing Stone's application across the desk at her. *Id.*

Despite the Bliss interview, Stone called Compton that evening to check on her chances for the next day. Stone testified that Compton told her "to get my clothes, my greasers ready and be ready to go out any morning to a location, and *if it was up to him* he would hire me in a minute, right there." Record, vol. 2, at 58 (emphasis added). The next morning, rather than reporting to the yard, Stone called the Company and was told by an unidentified person "not to come out, that I was not needed." *Id.* Stone had no further dealings with the Company.

In November and December Stone worked part-time as a floorhand for other companies. On December 31, she voluntarily left New Mexico with her husband to seek employment in Colorado. At the new location Stone worked only part-time until March 14, 1976, when she secured permanent, full-time employment. The district court awarded backpay from September 29, 1975, to March 14, 1976, and then deducted amounts actually earned by Stone during this period.

The Company raises two basic issues on appeal. First, the Company urges that certain uncontradicted testimony precludes a finding of discrimination. Second, the Company believes that, if the finding of discrimination was proper, the district court erred in awarding backpay both during the period of part-time New Mexico employment and after December 31, 1975, when Stone quit her part-time job and moved from New Mexico.

I.

The Company argues that Compton, in his evening telephone conversation with Stone, clearly offered her a position, and only her own failure to report was responsible for her unemployment. Furthermore, in the Company's view, the unidentified speaker contacted by Stone's early morning telephone call cannot, as a matter of basic agency law, be considered to have spoken for the Company.[1]

---

**1.** We assume *arguendo* that the Company properly raised the agency issue before the trial court.

The early morning call, standing alone, would raise troublesome agency questions. However, we do not believe that the district court's decision is dependent on that mysterious rejection. The court found that *Bliss* rejected the application and "made it clear to [Stone] that she would not be hired for a floorhand's position for the sole reason that she was a woman." Record, vol. 2, at 283. As reported by Stone, Compton's "offer" was contingent—Stone would be hired "if it was up to him," *id.* at 58—and merely reinforces the importance of the meeting with Bliss. In no way does the conversation with Compton present uncontroverted evidence of a job offer. We are bound to review the factual findings under a "clearly erroneous" standard, Fed.R.Civ.P. 52(a), and the trial court had ample evidence to justify its finding of discrimination.

## II.

■ The trial court has considerable leeway in fashioning remedies in Title VII cases. This court will upset backpay awards only if the trial court has abused its discretion. *Taylor v. Safeway Stores, Inc.*, 524 F.2d 263, 267 (10th Cir. 1975). *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280 (1975).

■ The Company argues that the part-time floorhand job Stone acquired in November was the equivalent of her sought-after Company job, and any award of backpay must end as of that time. The district court determined, however, that the Company had constant vacancies after Stone applied. Record, vol. 2, at 283. Stone, if hired, would soon have worked full-time. Comparable employment was full-time employment, and backpay was calculated using the average earnings of permanent, full-time employees as the standard. The constant availability of floorhand positions at the Company was clear from the record, *see, e. g., id.* at 16, and the court's finding is fully supported.

■ The Company also challenges the award of backpay for the period after December 31, 1975. Title VII requires that backpay awards be decreased by any interim earnings or "amounts earnable with reasonable diligence." 42 U.S.C. § 2000e–5(g). The Company argues that Stone's voluntary termination of her New Mexico part-time jobs shows a lack of reasonable diligence. Relying on *Muller v. United States Steel Corp.*, 509 F.2d 923, 930 (10th Cir. 1975), the Company charges that voluntary termination of comparable employment necessarily ends the backpay computation period.

The rationale of *Muller* simply does not extend to a case like this one in which the trial court determined that the terminated employment was not comparable to that sought at the Company. We are unwilling to hold that, as a matter of law, a jobseeker who voluntarily leaves noncomparable part-time employment and moves to another location to seek comparable work thereby displays a lack of reasonable diligence. Title VII should not be used to lock partially employed persons, fearful of losing backpay awards, into long-term unproductive geographical commitments. The reasonableness of Stone's action is underlined by her success in quickly finding comparable employment in Colorado. Although Stone's move was motivated in part by her husband's jobseeking, *see* Record, vol. 2, at 60, the trial court found no lack of reasonable diligence and, under our limited scope of review, we find no abuse of discretion.

The judgment is affirmed. Appellee is awarded reasonable attorney fees and costs on appeal, the attorney fees to be determined by the trial court on remand.