KELLEY COMPANY, INC., Petitioner-Respondent-Cross Appellant,

v.

Elizabeth MARQUARDT, Appellant-Cross Respondent,†

DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS, Respondent.

Court of Appeals

*No. 91-0445. Submitted on briefs October 1, 1991.—Decided December 3, 1991.*

(Also reported in 479 N.W.2d 185.)

†Petition to review granted.

For the appellant-cross respondent the cause was submitted on the briefs of *Michael O. Bohren* of *Marola & Bohren,* of West Allis.

For the petitioner-respondent-cross-appellant the cause was submitted on the briefs of *Fred G. Groiss* and *Carmella A. Huser* of *Quarles & Brady,* of Milwaukee.

Before Moser, P.J., Sullivan and Fine, JJ.

SULLIVAN, J. Elizabeth A. Marquardt appeals from an order of the circuit court which reversed an Equal Rights Division, Department of Industry, Labor and Human Relations (DILHR), Administrative Law Judge (ALJ). The ALJ concluded that upon return to work from maternity leave, Marquardt's employer, Kelley Company, Inc. failed to place her in an "equivalent employment position" in violation of sec. 103.10(8)(a)2, Stats. (position upon return from leave).[1] In support of the circuit court reversal, the Kelley Company argues

---

[1]The ALJ inadvertently concluded that Kelley Company violated sec. 103.10(8)(b), Stats., which regulates the disposition of accrued employment benefits upon return from medical leave. It is undisputed that this case involves family leave work return to which sec. 103.10(8)(a)2, Stats., applies. It provides:

> **(8)** Position Upon return from leave. (a) Subject to par. (c), when an employe returns from family leave or medical leave, his or her employer shall immediately place the employe in an employment position as follows:
>
> . . ..
>
> 2. If the employment position which the employe held immediately before the family leave or medical leave began is not vacant when the employe returns, in an equivalent employment position

47

that the ALJ had no jurisdiction to hear the case because Marquardt's complaint to DILHR was filed after the statute of limitations expired. In the event that the ALJ had jurisdiction, Kelley Company argues that Marquardt's new position was equivalent to her position prior to the departmental reorganization.[2] We affirm the circuit court order.

## FACTS

The historical facts leading to the alleged violation are not disputed. Kelley Company, a manufacturer of material handling devices, hired Marquardt in January of 1978 as a non-exempt billing clerk. Marquardt had a high school education.[3] In 1979 she was promoted to Credit and Collection Correspondent. In 1982, Kelley Company created and placed Marquardt in the position of Supervisor of Credit and Collections. In 1985, she took direct supervisory control of the credit and collection clerks, and her position was redesignated as exempt under the Fair Labor Standards Act of 1938.[4] In March 1987, Kelley Company terminated the Supervisor of

---

having equivalent compensation, benefits, working shift, hours of employment and other terms and conditions of employment.

This statute is commonly referred to as the Family and Medical Leave Act (FMLA). *See, e.g., MPI Wisc. Machining Div. v. DILHR*, 159 Wis. 2d 358, 464 N.W.2d 79 (Ct. App. 1990).

[2]If the ALJ's decision is reinstated, Kelley Company cross-appeals the ALJ's order granting Marquardt's back pay without offsets for interim earnings or offsets to damages that should have been mitigated. Since we affirm the circuit court's order, we do not reach the cross-appeal issue.

[3]Kelley Company had a tuition reimbursement program for college courses. Marquardt utilized the program to complete one college-level algebra course in 1986–87.

[4]*See* 29 U.S.C.A. §§ 201–219 (1991) (fair labor standards).

Credit and Collections position, and created the office of and designated Marquardt to be the Credit Manager.

The record reflects that Marquardt had communication difficulties with approximately twenty of a total of fifty-five Kelley Company manufacturing sales representatives.[5] Alan F. Susedik, Marquardt's immediate supervisor, hired a communications specialist in 1988 to work with Marquardt in an effort to improve her communication and interpersonal skills. This effort by Susedik was prompted by the Kelley Company president's request for improvement in the performance of the Finance Division, particularly Marquardt's relationships with the sales representatives. The communication specialist training proved insufficient in and of itself to improve Marquardt's performance. In the summer of 1988, Susedik decided, without consulting Marquardt, to reorganize the Finance Division and redefine her responsibilities. He informed her of the changes upon her return from maternity leave in December, 1988. The actual departmental reorganization occurred during Marquardt's leave of absence.

In March 1988, Marquardt informed Kelley Company that she was pregnant. In October 1988, she took a six-week family leave and two weeks of vacation. Marquardt returned to work on December 12, 1988. During her absence, Marquardt received 100% of salary during vacation and the first four weeks of leave, and received 80% of salary during the last two weeks of leave.

When Marquardt returned to work, she noted that her telephone had been unplugged and that several chairs were missing from her office. On December 13,

---

[5]Several letters in the record from sales representatives and Kelley Company customers addressed to Marquardt and Kelley Company's president illustrate the often highly contentious encounters Marquardt had with people outside the company.

1988, Susedik took Marquardt to lunch and informed her of the department reorganization. She was told that the responsibilities of her original Credit Manager position had been divided to create two positions. She would now supervise one employe, a billing clerk, instead of four that she had supervised prior to her leave.[6] Marquardt was now responsible for processing invoices, applying cash receipts to accounts receivable, and special projects assigned by Susedik. Marquardt's new responsibilities included approximately twenty-five percent clerical work.[7] Marquardt left work with Susedik's permission after lunch for the rest of the day.[8] She tendered her resignation the next day, December 14, 1988.

It is undisputed that Marquardt's new exempt position remained at the same rate of compensation, same benefits, same work shift and hours of employment, and that she retained her old office. Susedik considered Marquardt's move to be lateral and not a demotion. He contends the reorganization was necessary to insulate Marquardt from Kelley Company's sales representatives in order to maintain its customer base.

[6]One of Marquardt's former subordinates had become credit supervisor and would supervise Marquardt's other two former subordinates.

[7]According to the record, it was not uncommon for Kelley Company supervisory personnel to complete clerical tasks as needed.

[8]Susedik testified that after he told Marquardt of the departmental reorganization, Marquardt asked if she should start looking for other employment. Susedik said "no" in response and told Marquardt she was needed at Kelley Company.

## JURISDICTION

Kelley Company argues that Marquardt's claim is barred by sec. 103.10(12)(b), Stats. (administrative proceedings), because she filed her complaint thirty-one days after the alleged violation of FMLA. The relevant portion of the FMLA states:

> (b) An employe who believes his or her employer has violated sub. (11)(a) or (b) *may, within 30 days after the violation occurs* or the employe *should reasonably have known* that the violation occurred, whichever is later, file a complaint with the department alleging the violation.

Section 103.10(12)(b), Stats. (emphasis added). Kelley Company postulates that an affirmance of the ALJ's and the trial court's determinations that Marquardt complied with the statute of limitations would create an unlimited time period in which employes could file complaints with DILHR against employers under FMLA.

Marquardt concedes the fact that she did not file her complaint with DILHR within thirty days of the alleged violation as prescribed by statute. Nevertheless, Marquardt argues that Wisconsin Administrative Code Ind. 86.05 extends the time to file a complaint with DILHR when an employer does not comply with the posting requirements of FMLA rights. Marquardt contends that as a matter of law she could not have "reasonably known" of the FMLA violation until after Kelley Company had complied with the posting requirements.

Section 103.10(14)(a), Stats. (notice posted), requires an employer to post in a conspicuous location in the work place a notice, in a form approved by DILHR, setting forth an employe's rights under FMLA, sec.

103.10, Stats.[9] Section 103.10(12)(b) enables an employe to file a complaint to DILHR for a violation of FMLA within thirty days of the date the employe "should reasonably have known that the violation occurred." Wisconsin Administrative Code Ind. 86.05 provides, as a matter of law, that an employe is "deemed not to 'reasonably have known' that a violation occurred" when the employer is in non-compliance with the posting requirements of sec. 103.10(14)(a), Stats.[10] However, Ind. 86.05 enables an employer to negate the matter-of-law finding of "no knowledge of the violation" on the part of the employe when it can prove the employe had "actual

---

[9]Section 103.10(14)(a) and (b), Stats., states:

**(14)** Notice posted. (a) Each employer shall post, in one or more conspicuous places where notices to employees are customarily posted, a notice in a form approved by the department setting forth employes' rights under this section. Any employer who violates this subsection shall forfeit not more than $100 for each offense.

(b) Any person employing at least 25 individuals shall post, in one or more conspicuous places where notices to employes are customarily posted, a notice describing the person's policy with respect to leave for the reasons described in subs. (3)(b) and (4)(a).

[10]The Wis. Admin. Code, Ind. 86.05, effective December 1, 1989, states:

**Ind. 86.05 Time to commence administrative proceedings.** If an employer is not in compliance with the notice posting requirements of s. 103.10(14)(a), Stats., at the time a violation occurs under s. 103.10, Stats., an employe complaining of that violation shall be deemed not to "reasonably have known" that a violation occurred within the meaning of s. 103.10(12)(b), Stats., until either the first date that the employer comes into compliance with s. 103.10(14)(a), Stats., by posting the required notice, or the first date that the employe obtains actual knowledge of the information contained in the required notice, whichever date occurs earlier. If the employer is not in compliance with the notice posting requirements of s. 103.10(14)(a), Stats., at the time a violation occurs under s. 103.10, Stats., the employer has the burden of proving actual knowledge on the part of the employe within the meaning of this section.

knowledge" of a violation. Based on this statute and administrative code, the ALJ ruled that Marquardt's complaint was filed within the statute of limitations and therefore the agency had jurisdiction to hear the case. We agree.

The proper standard of review of an ALJ's conclusions of law under sec. 103.10, Stats., is *de novo. MPI Wisc. Machining Div. v. DILHR,* 159 Wis. 2d 358, 367, 464 N.W.2d 79, 82 (Ct. App. 1990). We determine that the ALJ's conclusions of law under sec. 103.10, Stats., in conjunction with Ind. 86.05, is proper. A review of the record indicates that proper notice of employe rights under FMLA was not posted at Kelley Company until January 1989, the month following Marquardt's resignation.[11] On appeal, Kelley Company does not refute this asserted fact. We therefore conclude that Kelley Company has not met its burden of proof in showing Marquardt had "actual knowledge" of the alleged violation.[12] *See Charolais Breeding Ranches, Ltd. v. FPC Securities*

---

[11]The operative effect of sec. 103.10, Stats. (effective April 26, 1988), caused Kelley Company to distribute a memorandum and newsletter dated May 4, 1989 to all supervisory personnel, including Marquardt. The newsletter, prepared by the MRA Institute of Management, outlined the rights of employes under the new law but did not specifically address the statute of limitations matter. Whether the newsletter of May 4, 1989 constituted a DILHR approved notice under sec. 103.10(14)(a) is an undetermined fact that we decline to address, *Goranson v. DILHR,* 94 Wis. 2d 537, 545, 289 N.W.2d 270, 274 (1980) (issue not raised before an agency generally cannot be raised on appeal), nor is it a fact necessary for the disposition of this appeal.

[12]In the circuit court's decision to reverse the ALJ's decision on the grounds that Marquardt had "equivalent employment" upon her return from leave, the court stated that "[t]he only positive testimony in respect to the posting of the Act is that the

*Corp.,* 90 Wis. 2d 97, 109, 279 N.W.2d 493, 499 (Ct. App. 1979) ("Respondents cannot complain if propositions of appellants are taken as confessed which they do not undertake to refute.") (citation omitted).

## EQUIVALENT EMPLOYMENT

█

Marquardt appeals from the circuit court's decision to reverse the ALJ's decision which found Marquardt did not receive an "equivalent employment position" upon her return from maternity leave as required by sec. 103.10(8)(a)2. Since the ALJ is the finder of fact in this case, we look to sec. 227.57(6), Stats. (scope of review), for the standard of review. An ALJ's findings of fact will be affirmed on appeal if supported by substantial evidence in the record. *Id. See also MPI Wisc. Machining Div.,* 159 Wis. 2d at 365, 464 N.W.2d at 81.

Section 103.10(8)(a) enables an employe who returns from a family or medical leave under this chapter to be immediately placed in one of two employment positions:

> 1. If the employment position which the employe held immediately before the family leave or medical leave began is vacant when the employe returns, in that position.
> 2. If the employment position which the employe held immediately before the family leave or medical leave began is not vacant when the employe returns, in *an equivalent employment position having equivalent compensation, benefits, working shift, hours of employment and other terms and conditions of employment.*

notice (of the provisions of the Act) was seen by Al Schultz 'after December 19, 1988.' "

Section 103.10(8)(a)1 and 2, Stats. (Emphasis added.)

At the crux of this issue is the meaning of "equivalent employment." Since the term "equivalent" is not defined in ch. 103, we may look to a recognized dictionary for the common and ordinary meaning of the word. Section 990.01(1), Stats. (construction of laws, words and phrases), General Rule: "All words and phrases shall be construed according to common and approved usage . . .."; *see also Kollasch v. Adamany,* 104 Wis. 2d 552, 563, 313 N.W.2d 47, 53 (1981). Webster's Dictionary defines equivalent as "equal in force or amount . . . like in signification or import . . . equal in value." *Webster's Third New International Dictionary,* 769 (1976).

The legislature explicitly set forth what characteristics of the substitute employment were to be equivalent under subsection (2): "equivalent compensation, benefits, working shift, hours of employment and other terms and conditions of employment." Marquardt contends that she was not provided equivalent employment upon her return from maternity leave. In her new position, Marquardt would supervise one person, compared to four persons as Credit Manager; she would perform more clerical work than she did as Credit Manager; and she would be completely removed from all sales representative and customer contact, her principal responsibility as Credit Manager.

Conspicuously absent from the required substitute employment under sec. 103.10(8)(a)2, Stats., is equivalency in "authority" or "responsibility." We do not find support in this statute for Marquardt's contention that "equivalent employment" means a return to her former level of responsibility and/or authority, perhaps as a Credit Manager or some other position. The

55

record contains no substantial evidence that supports the ALJ's finding that the position Marquardt was offered upon her return was not "equivalent" to her former position as Credit Manager as set forth in sec. 103.10(8)(a)2. The record does reflect that Marquardt's new position would have had the same compensation rate, hours of employment, benefits, exempt supervisory status, office space and furniture, and would have been assigned to work within the same department as her former position. Marquardt's new position, had she chosen not to resign, met the requirements of sec. 103.10(8)(a)2, Stats.; the characteristics of her new position were "equal in force" and "like in signification" to the characteristics of her former position as set forth in subsection (8)(a)2. Moreover, the reorganization of the Finance Division in December 1988 was consistent with a history of periodic Finance Division reorganizations and, on its face, does not appear to be an act of discrimination. We decline her invitation to read into this statute "responsibility" or "authority" as criteria of equivalent employment.

■

Marquardt also argues that she was discriminated against on the basis of sex; i.e., her pregnancy.[13] She

---

[13]In a separate but related argument, Marquardt contends that the definition of sex discrimination in FMLA should be construed consistent with the federal Pregnancy Discrimination Act, 42 U.S.C. sec. 2000e(k) (1988) (definitions), and that federal case law is supportive of her position. Citing federal case law, Marquardt contends that discrimination based on pregnancy is included in the embrace of discrimination based on sex. By equating this federal statute with FMLA, Marquardt concludes that her rights were violated when Kelley Company confronted her with possible loss of job or seniority by virtue of her pregnancy. We reject Marquardt's rationale because she does not argue that

stated that her new position was pretextual and not worthy of credence, relying upon *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248 (1981) and *Felts v. Radio Distrib. Co.,* 637 F. Supp. 229 (N.D. Ind. 1985). It is unclear from the facts and Marquardt's brief how Kelley Company's restructuring of the Finance Division constituted an act of sex discrimination. We address the issue of Kelley Company's decision to restructure its Finance Division only so far as to say this court will not assume the role of chairman of the board in evaluating a business decision absent particularized evidence in the record which supports a claim of sex discrimination due to pregnancy. *See In re Balkus,* 128 Wis. 2d 246, 255 n.5, 381 N.W.2d 593, 598 n.5 (Ct. App. 1985) (the court of appeals may decline to review an issue undeveloped or inadequately briefed).[14]

*By the Court.*—Order affirmed.

sec. 103.10(8)(a)2, Stats., is ambiguous. Accordingly, we shall not resort to the federal statute for its interpretation, assuming that the federal and state laws in pregnancy discrimination are equivalent. *See In re Estate of Haase,* 81 Wis. 2d 705, 707, 260 N.W.2d 809, 811 (1978) (when federal and Wisconsin statutes are similar, the interpretations of federal courts of federal laws should be given considerable weight).

[14]Marquardt also argues that she was constructively discharged. We decline to address this issue as well because an affirmance of the trial court in this case is dispositive of this related claim. *See Gross v. Hoffman,* 227 Wis. 296, 300, 277 N.W. 663, 665 (1938).