KELLEY COMPANY, INC., Petitioner-Respondent-Cross
Appellant,

v.

Elizabeth MARQUARDT, Appellant-Cross Respondent-
Petitioner,

DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELA-
TIONS, Respondent.

Supreme Court

*No. 91-0445. Oral argument October 6, 1992.—Decided
December 16, 1992.*

(Also reported in 493 N.W.2d 68.)

236

237

238

For the appellant-cross respondent-petitioner there were briefs by *Michael O. Bohren,* Milwaukee and oral argument by *Michael O. Bohren* and *Christine H. Ohlis.*

For the petitioner-respondent-cross appellant there was a brief by *Fred G. Groiss, Carmella A. Huser* and *Quarles & Brady,* Milwaukee and oral argument by *Ms. Huser.*

Amicus Curiae brief was filed *Susan Brehm,* and *Center for Public Representation* Madison for the Center for Public Representation.

JON P. WILCOX, J. This is a review under sec. (Rule) 809.62, Stats., of a court of appeals decision, *Kelley Company, Inc. v. Marquardt,* 166 Wis. 2d 45, 479 N.W.2d 185 (Ct. App. 1991), affirming an order of the Milwaukee County Circuit Court, Judge Patrick J. Madden, which reversed a decision of the Department of Industry, Labor and Human Relations, Equal Rights Division (DILHR). The hearing examiner concluded that upon return to work from family leave, Marquardt's employer, Kelley Company, Inc., failed to place her in an "equivalent employment position" in violation of the Family and Medical Leave Act (FMLA), sec. 103.10(8)(a)2, Stats.[1]

---

[1] Section 103.10(8)(a), Stats., provides:

(8) POSITION UPON RETURN FROM LEAVE (a) Subject to par. (c), when an employe returns from family leave or medical leave, his or her employer shall immediately place the employe in an employment position as follows:

1. If the employment position which the employe held immediately before the family leave or medical leave began is vacant when the employe returns, in that position.

There are two issues before this court. The first issue is whether Kelley Company violated the FMLA, sec. 103.10(8)(a), Stats., by failing to place Marquardt in an equivalent employment position when she returned from family leave. We conclude that Marquardt's new position was not equivalent to the position she occupied before taking family leave. We reverse the court of appeals on this issue.

The second issue is whether the hearing examiner properly awarded back pay to Marquardt and whether her interim earnings or amounts earnable with reasonable diligence should have reduced the back pay otherwise allowable. We conclude that back pay was properly awarded and that interim earnings and amounts earnable with reasonable diligence should be considered when back pay is awarded under the FMLA. We remand to the hearing examiner for a determination of the proper back pay to be awarded Marquardt consistent with this opinion.

The relevant facts are not disputed. Kelley Company, a manufacturer of material handling devices, hired Marquardt in January 1978 as a billing clerk. Marquardt had a high school education. Marquardt was promoted to Credit and Collection Correspondent in 1979. In 1982, Kelley Company created and placed Marquardt in the position of Supervisor of Credit and Collections. In 1985, Marquardt took direct supervisory control of the credit and collections clerks. In March 1987, Marquardt's position of Supervisor of Credit and Collections was eliminated, and she was redesignated Credit Manager.

---

2. If the employment position which the employe held immediately before the family leave or medical leave began is not vacant when the employe returns, in an equivalent employment position having equivalent compensation, benefits, working shift, hours of employment and other terms and conditions of employment.

When Marquardt became Credit Manager, the position had no job description; however, sometime after she assumed the position, Marquardt and her immediate supervisor, Alan Susedik, compiled a job description for the position. Marquardt's general responsibilities as Credit Manager included: supervising four employees in the Credit and Collection Department; contacting sales representatives; handling complaints; supervising credit rating investigations; evaluating financial risks; handling budgeting for the department; employing a collection agency; and supervising accounts receivable.

The record reflects that Marquardt had communication difficulties with approximately twenty of a total of fifty-five Kelley Company manufacturing sales representatives whom she dealt with regularly as Credit Manager. Marquardt's annual performance evaluations, dating back to 1985, indicate that Marquardt was having difficulty communicating with the sales representatives and listed as a yearly goal improvement in this area. Susedik hired a communications specialist in 1988 to work with Marquardt in an effort to improve her communication and interpersonal skills. The communication training proved unsuccessful in improving Marquardt's performance. Although Marquardt was having communication difficulties, her performance evaluations overall were good and she received high raises.

In March 1988, Marquardt informed Kelley Company that she was pregnant. In October 1988, she took a six-week family leave and two weeks of vacation. Marquardt returned to work on December 12, 1988.

During the summer of 1988, Susedik decided to reorganize the Finance Division and redefine Marquardt's responsibilities. Susedik did not consult Marquardt regarding the reorganization. He informed Marquardt of the changes upon her return from family leave

in December 1988. The actual departmental reorganization occurred during Marquardt's family leave.

As part of the reorganization, Marquardt's position as Credit Manager was eliminated and divided to create two positions. Marquardt's new position did not involve interaction with sales representatives. Marquardt's new position involved supervising one employee, a billing clerk, instead of the four employees she supervised prior to her leave. Marquardt was now responsible for processing invoices, invoice auditing, applying cash receipts to accounts receivable, and special projects assigned by Susedik. Marquardt's new responsibilities included approximately twenty-five percent clerical work.[2] Marquardt's new job had the same pay, same benefits, and the same office as her prior position. Marquardt still held a managerial position which reported directly to Susedik. Marquardt's new position did not have a job title or job description. Susedik explained that the purpose of the reorganization was to use Marquardt's strengths and talents and to eliminate her problem of customer contact.

Kathy Bartkowski, who worked under Marquardt prior to her leave, was assigned the other position created when the Credit Manager position was eliminated. Bartkowski became the Credit Supervisor and two of the employees who worked under Marquardt now reported directly to Bartkowski. Bartkowski handled contacts with the sales representatives and was given no authority over Marquardt.

In December 1988 when Marquardt returned to work, she discovered that several chairs were missing from her office and that her telephone had been unplug-

---

[2] According to the record, other managers at Kelley Company performed some clerical tasks, but it is not clear what percentage of their job responsibilities included clerical work.

ged. Susedik was not in the office when Marquardt returned, but he left her a note welcoming her back and giving her instructions on certain projects. The following day, Susedik took Marquardt to a welcome back luncheon where he discussed her new job duties. After Susedik explained Marquardt's new job duties and responsibilities, she asked him if she should start looking for a job. Susedik said "no" and told Marquardt that she was needed at the Kelley Company. When Susedik and Marquardt returned to the office, Susedik gave Marquardt permission to take the rest of the day off. Marquardt tendered her resignation the next day. Susedik made no attempt to talk Marquardt out of leaving Kelley Company.

On January 13, 1989, Marquardt filed a complaint with DILHR, alleging that Kelley Company violated the FMLA by failing to give her an equivalent employment position upon her return from family leave. On March 23, 1990, a hearing examiner representing DILHR found that Kelley Company had violated the FMLA by failing to place Marquardt in an equivalent employment position after return from family leave. The hearing examiner ordered Kelley Company to reinstate Marquardt to the position she held prior to her discharge or to a substantially similar position. The hearing examiner ordered Kelley Company to pay Marquardt back pay in an amount equal to the sum she would have earned as an employee from the date of Kelley Company's failure to place her in an equivalent employment position until Marquardt was reinstated or declined to accept reinstatement in an equivalent position. Interest was calculated at 12 percent. Any unemployment compensation or welfare benefits received by Marquardt during the relevant period were to be withheld by Kelley Company and paid back to the appropriate agency. Kelley Company

was also ordered to pay Marquardt's attorney fees in the amount of $3,785.20.

The circuit court reversed, reasoning that there was no substantial evidence in the record supporting the conclusion that Kelley Company violated the FMLA by failing to place Marquardt in an equivalent position after her return from family leave. The court of appeals affirmed.[3] We granted Marquardt's petition for review.

The issues presented in this case are questions of law which require this court to interpret the FMLA. When reviewing questions of law, we are not bound by an administrative agency's conclusions.[4] This court has applied three levels of deference to conclusions of law and statutory interpretation in agency decisions. *Jicha v. DILHR*, 169 Wis. 2d 284, 290, 485 N.W.2d 256 (1992); *Sauk County v. WERC*, 165 Wis. 2d 406, 413, 477 N.W.2d 267 (1991). First, if the administrative agency's experience, technical competence, and specialized knowledge aid the agency in its interpretation and application of the statute, the agency determination is entitled to "great weight." *Jicha*, 169 Wis. 2d at 290–91; *Sauk County*, 165 Wis. 2d at 413. The second level of review is a mid-level standard that provides if the agency decision is "very nearly" one of first impression it is entitled to "due weight" or "great bearing." *Jicha*, 169

---

[3] Before the court of appeals, Kelley Company argued that Marquardt's claim was not timely filed and was barred by sec. 103.10(12)(b), Stats. The court of appeals held that Marquardt's claim was timely filed. This issue was not raised before this court and is not addressed in this opinion.

[4] Under the FMLA, the decision of a hearing examiner is the final decision of DILHR for purposes of judicial review. *See* Wisconsin Admin. Code Sec. Ind. 86.21(3); *Jicha v. DILHR*, 169 Wis. 2d 284, 291–92, 485 N.W.2d 256 (1992).

Wis. 2d at 291; *Sauk County,* 165 Wis. 2d at 413-14. The third level of review is de novo and is applied when the case is clearly one of first impression for the agency and the agency lacks special expertise or experience in determining the question presented. *Jicha,* 169 Wis. 2d at 291; *Sauk County,* 165 Wis. 2d at 414.

The first issue requires this court to interpret the FMLA, sec. 103.10(8)(a)2, Stats., to determine the meaning of "equivalent employment position." This was a question of first impression before DILHR. The hearing examiner did not make a finding as to the meaning of an "equivalent employment position," but merely concluded that Marquardt was not placed in an equivalent employment position upon her return from family leave. This case differs from *Jicha* where this court gave great weight to a DILHR decision interpreting whether a claim was timely filed under the FMLA, sec. 103.10(12)(b), Stats. In *Jicha,* this court pointed out that DILHR had experience and expertise in interpreting the statute of limitation provisions under the FMLA and a closely analogous statute, the Wisconsin Fair Employment Act. *Jicha,* 169 Wis. 2d at 292. DILHR also went through a rule making process and adopted administrative rules interpreting the statute of limitation provisions of the FMLA. *Id.* In contrast, DILHR adopted no administrative rules interpreting the meaning of "equivalent employment position" under FMLA, sec. 103.10(8)(a)2, Stats. *See Local No. 695 v. LIRC,* 154 Wis. 2d 75, 83-84, 452 N.W.2d 368 (1990). That this is a case of first impression in which DILHR has no experience or expertise is evident from the fact that the hearing examiner relied on no precedent and had no rules to aid him in arriving at his conclusion of law that Marquardt was not placed in an equivalent employment

245

position. *See Nottelson v. DILHR,* 94 Wis. 2d 106, 117, 287 N.W.2d 763 (1980). The proper standard of review for this first issue is de novo.

The second issue before this court is whether the hearing examiner's order of reinstatement and back pay were appropriate in this case when the hearing examiner concluded that Marquardt was not constructively discharged and failed to consider mitigation of damages. This is a question of law. Factors to consider in ordering reinstatement and back pay are not foreign to DILHR. We conclude that DILHR's decision on this issue is entitled to great weight because DILHR has gained experience and expertise concerning awards of reinstatement and back pay under the FMLA and other similar statutes.[5]

### Equivalent Employment Position

The primary issue before this court is whether Kelley Company violated the FMLA, sec. 103.10(8)(a)2, Stats., by failing to place Marquardt in an equivalent employment position when she returned from family leave. This issue requires us to determine the meaning of "equivalent employment position" and apply that meaning to the facts in this case.

The FMLA, sec. 103.10(8)(a), Stats., requires that when an employee returns from family or medical leave, the employer must immediately place the employee in his or her former employment position or an equivalent employment position if the employee's former position is not vacant. If the employee is not placed in his or her former position because it is not vacant, the equivalent

---

[5] *See, e.g.,* Wisconsin Fair Employment Act, sec. 111.31, Stats., et al.

employment position must have "equivalent compensation, benefits, working shift, hours of employment and *other terms and conditions of employment.*" Section 103.10(8)(a)2, Stats. (emphasis added).

The issue in this case centers on the meaning of the statutory language "other terms and conditions of employment." The argument centers on whether Marquardt's new position contained "terms and conditions of employment" equivalent to the position she occupied prior to taking family leave.

There is no dispute that Marquardt's new position upon return from leave was equivalent in terms of compensation, benefits, working shift, and hours of employment. Marquardt argues, however, that the "other terms and conditions" of her new position were not equivalent to her position as Credit Manager prior to taking family leave. Marquardt argues that the phrase "other terms and conditions of employment" was intended to include authority and responsibility. Marquardt asserts that her new position was not an equivalent employment position because her authority and responsibility were greatly reduced in the new position. We agree.

The aim of all statutory construction is to discern the intent of the legislature. *Terry v. Mongin Ins. Agency,* 105 Wis. 2d 575, 583, 314 N.W.2d 349 (1982). In ascertaining that intent, the first resort is to the language of the statute itself. *Voss v. City of Middleton,* 162 Wis. 2d 737, 748, 470 N.W.2d 625 (1991). If the language of the statute clearly and unambiguously sets forth the legislative intent, it is the duty of the court to apply that intent to the case at hand and not look beyond the statutory language to ascertain its meaning. *Id.* However, if the language of the statute does not clearly and unambiguously set forth the legislative intent, the court

will resort to judicial construction of the statute to ascertain and carry out the legislative intent. *Id.* Where one of several interpretations of a statute is possible, the court must ascertain the legislative intent from the language of the statute in relation to its context, subject matter, scope, history, and object intended to be accomplished. *Terry,* 105 Wis. 2d at 584.

The language of sec. 103.10(8)(a)2, Stats., is ambiguous. It is not clear from the language what an equivalent employment position is because the term "other terms and conditions of employment" is ambiguous. On its face the statute gives no indication what the legislature intended to include as "other terms and conditions of employment."

The FMLA requires most employers in this state who employ at least fifty individuals to permit employees to take family and medical leave. The FMLA sets forth minimum rights for family and medical leave, but permits an employer to provide rights which are more generous to the employee.[6] An employee may take family leave for any of the following reasons: (1) the birth of the employee's natural child; (2) the placement of a child with the employee for adoption; and (3) to care for the employee's child, spouse or parent who has a serious health condition.[7] An employee may take medical leave if the employee has a serious health condition which makes the employee unable to perform his or her employment duties.[8]

The legislative history of the FMLA reveals that the Act was intended to assist workers in handling conflicts between the demands of their work and the needs of

---

[6] Section 103.10(2)(a), Stats.

[7] Section 103.10(3)(b), Stats.

[8] Section 103.10(4)(a), Stats.

their families.[9] The FMLA was a response to the increased entry of women, the persons traditionally responsible for family care giving, into the work force.[10] The FMLA was designed to accomplish the following: make employees more productive on the job because they will have dealt with family crises while on leave; help ease the day care shortage; save health care costs by allowing children to care for seriously ill parents at home; and make bonding for new infants and adjustment periods for adopted children go easier which will have long term psychological benefits for children.[11]

The FMLA is designed to protect employees' jobs and benefits while on leave to care for their families or their own medical needs. The FMLA accomplishes this by ensuring that an employee who takes a family or medical leave must be returned to the same position he or she held before taking leave or if that position is not vacant, an equivalent employment position. An equivalent employment position must have equivalent compensation, benefits, working shift, hours of employment and other terms and conditions of employment. We conclude that the legislature included the language "other terms

[9] State Senator John Plewa, the Act's author and principal sponsor, stated that "many people are caught between the pressures of parenthood and livelihood." Plewa also stated that the bill was needed because "parents are finding it difficult to balance the demands of work and their duties as mothers and fathers." *See* Gabrielle Lessard, Comment, *Conflicting Demands Meet Conflict of Laws: ERISA Preemption of Wisconsin's Family and Medical Leave Act,* 1992 Wis. L. Rev. 809.

[10] *See* Lessard, *supra* note 10, at 816–19 (Act also designed to benefit single parents and fathers who must support and care for families).

[11] Memo from State Senator John Plewa to members of the Assembly contained in the legislative drafting records to 1987 Act 287.

and conditions of employment" to protect the employee's status, responsibility and authority while on leave. There is a deterrent factor in taking leave if all that is protected is an employee's salary, hours, and benefits. It is punitive in nature for an employee to have job responsibility and authority stripped while on leave. This forces an employee to choose between their family or health and job which is exactly what the legislature intended to prevent by adopting the FMLA.

In defining what a substantially equivalent position was for reinstatement under the Wisconsin Fair Employment Act, this court stated that comparability in salary was only one factor to be considered in determining whether a new position was substantially equivalent to the employee's previous position. *Anderson v. LIRC,* 111 Wis. 2d 245, 256, 330 N.W.2d 594 (1983). This court stated that "[c]omparability in status is often more important, especially as it relates to opportunities for advancement or for other employment." *Id.*

The phrase "other terms and conditions of employment" is merely surplus if it is not interpreted to mean an employee's status, responsibility, and authority. A court should avoid interpreting a statute in such a way as to render any portion surplus language. *Voss,* 162 Wis. 2d at 751. Kelley Company argues that the legislature intended to keep the definition of "other terms and conditions of employment" broad enough to meet the myriad of employment situations that could occur in the work forces of diverse employers, giving employers flexibility to make reasonable job assignments when an employee's position is no longer vacant upon return from family or medical leave. However, the phrase is not necessary to accomplish that purpose. The legislature specifically stated that an employee's compensation, bene-

fits, working shift, and hours of employment are protected. The only reasonable interpretation is that the phrase "other terms and conditions of employment" was meant to include job status, responsibility, and authority.

Kelley Company asserts that it would be poor public policy to require employers to hold jobs open while employees are on family or medical leave. We agree. An employer is not stopped from reorganizing departments or making changes in job positions for legitimate business reasons during the time an employee is away on family or medical leave as long as the same position or an equivalent employment position is available for the employee upon return from leave. This makes sense from a public policy perspective. On one hand, businesses are not curtailed from making legitimate business decisions and changes, and on the other hand, an employee may take family or medical leave without the fear of losing his or her position in the work place which includes status, authority, and responsibility. The legislature determined that it is important to protect employee's jobs while they are on family or medical leave. An employer can make changes in job positions while an employee is on leave as long as the employee is placed in an equivalent employment position upon return from leave.

Marquardt was not returned to an equivalent employment position when she returned from family leave. Marquardt's supervisory duties were reduced from supervising four employees to just one employee. Marquardt's new position entailed performing 25 percent clerical work. Her prior position entailed no clerical work. Marquardt's job status, authority, and responsibility were greatly reduced in her new position. Although Marquardt was still designated a manager, her new job

251

duties were far less significant than those she performed prior to leave. Kelley Company essentially demoted Marquardt during the time she was on family leave which is the type of activity the FMLA was designed to prevent.

Kelley Company argues that before she took leave, Marquardt had no right to prevent Kelley Company from reorganizing the Finance Division and she had no guarantee that she would remain in the same job with similar duties. This is true and the fact that Kelley Company reorganized Marquardt's department and gave her new job duties is not a violation of the FMLA. Kelley Company violated the FMLA by giving Marquardt job duties that were not equivalent in significance to those she performed before taking leave. The fact that Marquardt's new job involved 25 percent clerical work and less supervisory duties indicates that her status, responsibility and authority were greatly reduced in violation of the FMLA.

Kelley Company correctly argues that the FMLA was not intended to protect employees from problems they were experiencing on the job. Kelley Company points out that Marquardt had communication problems with customers long before she took family leave. Kelley Company maintains that Marquardt's reassignment to a position that eliminated customer contact was inevitable whether she took family leave or not. While this may be true, the FMLA required Kelley Company to place Marquardt in an equivalent employment position upon her return from family leave. The equivalent position upon return from leave need not include the same job duties, but it must be equivalent in status, responsibility and authority.

Kelley Company claims that performing clerical work at the company was a normal part of some managers' duties. Kelley Company further asserts that per-

forming clerical work was no indication that a manager was of a lesser status than other managers. However, there is no indication in the record of how much clerical work other managers were required to perform as part of their everyday duties. Marquardt's status and responsibility were reduced from performing no clerical work to performing 25 percent clerical work.

We hold that an equivalent employment position means a position with equivalent compensation, benefits, working shift, hours of employment, *job status, responsibility and authority.* The equivalent position need not include the same job duties, but the new duties must be equivalent in terms of significance to those performed prior to the leave. The only reasonable meaning that can be given to the phrase "other terms and conditions of employment" is that the legislature intended to protect an employee's job status, responsibility and authority. Since we conclude that Marquardt was not given an equivalent employment position upon return from leave, we reverse the court of appeals.

Back Pay

Under the FMLA, DILHR may order an employer who violates the Act to reinstate the employee and pay the employee back pay plus reasonable actual attorney fees.[12] Although the FMLA does not expressly provide

---

[12] Section 103.10(12)(d), Stats., provides:

    **(12)** ADMINISTRATIVE PROCEEDING.

        . . .

    (d)   The department shall issue its decision and order within 30 days after the hearing. If the department finds that an employer violated sub. (11)(a) or (b), it may order the employer to take action to remedy the violation, including providing requested family leave

that back pay awards are to be reduced by interim earnings or amounts earnable with reasonable diligence, we conclude that the principles of mitigation of lost wages should apply in cases arising under the FMLA.

The Wisconsin Fair Employment Act, a statute closely analogous to the FMLA, provides:

> Interim earnings or amounts earnable with reasonable diligence by the person discriminated against or subjected to unfair honesty testing shall operate to reduce back pay otherwise allowable.

Section 111.39(4)(c), Stats. In its brief to the circuit court, DILHR cited sec. 111.39(4)(c) and argued that a back pay award under the FMLA should be reduced by interim earnings and amounts earnable with reasonable diligence. This conclusion is reasonable because there is no indication that the legislature intended that employees be made more than whole under the FMLA. If back pay is not reduced by the employee's interim earnings or failure to mitigate, then the employee enjoys a windfall in the form of higher compensation than he or she would have received if the FMLA was not violated.

In Marquardt's case, the hearing examiner ordered Kelley Company to immediately reinstate her and pay back pay. The hearing examiner's order effectively reduced the back pay by any unemployment compensation or welfare benefits Marquardt received. The hearing examiner's order referred to a deduction for all statutory set-offs, but did not address interim earnings or amounts earnable with reasonable diligence. The record indicates that Marquardt was employed during part of the back pay period and that she may have failed to seek employ-

---

or medical leave, reinstating an employe, providing back pay accrued not more than 2 years before the complaint was filed and paying reasonable actual attorney fees to the complainant.

ment during another part of the back pay period. Kelley Company asks this court to reverse the hearing examiner's order because it fails to reduce the back pay award by these factors. We remand to DILHR for a determination of appropriate back pay to be awarded Marquardt consistent with this opinion.

Kelley Company also argues that it cannot be liable for reinstatement or back pay because Marquardt quit and was not constructively discharged.[13] The FMLA does not state that a constructive discharge is a requirement for reinstatement or back pay. Kelley Company cites nothing from the legislative history indicating that a constructive discharge is a prerequisite to reinstatement or an award of back pay. We conclude that the only prerequisite to an order for reinstatement and back pay is that the employer violated the FMLA.[14]

The fact that an employee voluntarily quit his or her employment with an employer is an appropriate factor for the department to consider in determining whether the employee mitigated his or her damages.[15] Not all voluntary terminations constitute a lack of reasonable diligence. *Stone v. D.A.&S. Oil Well Servicing, Inc.*, 624 F.2d 142 (10th Cir. 1980). On remand, DILHR must determine whether Marquardt acted reasonably in quitting after her return from family leave.

---

[13] The hearing examiner found that "there was no evidence offered that would show that [Marquardt's] working conditions were so intolerable that she had to quit."

[14] Section 103.10(12)(d), Stats.

[15] *See Garner v. Wal-Mart Stores, Inc.*, 807 F.2d 1536 (11th Cir. 1987).

*By the Court.*—The decision of the court of appeals is reversed, and the cause is remanded for further proceedings consistent with this opinion.