REBECCA GRASSL BRADLEY, J. (dissenting).
*639 ¶ 40 The legislature unquestionably intended to include wine distributors as dealers under Wis. Stat. ch. 135 and then-Governor Tommy Thompson[1] obviously intended to exclude them. But legislative intent behind enactment of a law-or executive intent motivating the exercise of a veto-cannot govern statutory interpretation. Rather, our analysis must focus on the statutory language itself and "[i]f the meaning of the statute is plain, we ordinarily stop the inquiry." State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. A plain meaning *748 interpretation of ch. 135, giving effect to every word, requires answering the certified question from the Seventh Circuit Court of Appeals in the affirmative: The definition of a "[d]ealership" contained in Wis. Stat. § 135.02(3)(b) includes wine grantor-dealer relationships. The isolated definition in Wis. Stat. § 135.066(2)(a), on which the majority relies to reach the opposite conclusion, applies only in § 135.066. Because the majority's interpretation is wrong, I respectfully dissent.
I
¶ 41 Wisconsin Stat. ch. 135, also known as the Wisconsin Fair Dealership Law, governs grantor-dealer relationships and "shall be liberally construed and applied to promote" the purposes set forth in Wis. Stat. § 135.025(2), which include, for example, (1) fairness in business relationships between dealers and grantors and in their continuation; (2) protection of dealers from grantors who "have superior economic power and superior bargaining power"; and (3) statutory rights and remedies for dealers.[2]
*749 ¶ 42 The question before the court is whether the two wine distributors in this case are "[d]ealers" protected by ch. 135. The wine distributors claim dealership status, while Winebow insists ch. 135 does not apply to wine distributors at all. A textual interpretation of ch. 135 provides a clear answer: the wine distributors are "[d]ealers."
¶ 43 The analysis necessarily starts in Wis. Stat. § 135.02, which supplies the definitions to be used throughout ch. 135. Section 135.02 defines both "Dealer" and "Dealership." Section 135.02 provides, as material:
In this chapter:
*640 (2) "Dealer" means a person who is a grantee of a dealership situated in this state.
(3) "Dealership" means any of the following:
....
(b) A contract or agreement, either expressed or implied, whether oral or written, between 2 or more persons by which a wholesaler, as defined in s. 125.02(21), is granted the right to sell or distribute intoxicating liquor or use a trade name, trademark, service mark, logotype, advertising or other commercial symbol related to intoxicating liquor. This paragraph does not apply to dealerships described in s. 135.066(5)(a) and (b).
*750 (Emphasis added.) To determine whether a "[d]ealership" exists between Winebow and the two wine distributors, we need to know whether the wine distributors are "wholesaler[s]."
¶ 44 The language of Wis. Stat. § 135.02(3)(b) directs us to the definition of "wholesaler" under Wis. Stat. § 125.02(21).[3] Section 125.02(21) defines "[w]holesaler" as "a person, other than a brewer, brewpub, manufacturer, or rectifier, who sells alcohol beverages to a licensed retailer or to another person who holds a permit to sell alcohol beverages at wholesale." The dispute in this case revolves around whether wine is an "alcohol beverage" as referenced in the "wholesaler" definition. Section 125.02(1) defines "alcohol beverage" as "fermented malt beverages and intoxicating liquor" and § 125.02(8) defines "[i]ntoxicating liquor" as:
[A]ll ardent, spirituous, distilled or vinous liquors, liquids or compounds, whether medicated, proprietary, patented or not, and by whatever name called, containing 0.5 percent or more of alcohol by volume, which are beverages, but does not include "fermented malt beverages".
(Emphasis added.) Everyone agrees that vinous liquors include wine. Construing the text of these statutes leads to the inexorable conclusion that the wine distributors are wholesalers whose agreements with Winebow create dealerships protected by ch. 135.
¶ 45 The majority decries this interpretive exercise as a "practice" with "no clear stopping point."
*751 Majority op., ¶ 37. While our judicial duty of declaring what a statute says would be easier if each statutory chapter confined its subject matter to that particular chapter, legislative enactments are rarely so linear. On the scale of interpretive complexity, our task falls on the easy end. Inexplicably, the majority maintains the key definition from Wis. Stat. ch. 125 is not referenced within ch. 135, see majority op., ¶ 37; this is of course inaccurate because Wis. Stat. § 135.02(3)(b) explicitly references Wis. Stat. § 125.02(21), which provides the definition of "[w]holesaler." This cross-reference to ch. 125 (governing alcohol beverages) within the rather brief ch. 135 requires no more than reading three definitions within the same section of ch. 125 (i.e., § 125.02 ), each of which is explicitly connected. Far from lacking a clear stopping point, the analysis requires us to start with ch. 135 and end in one section of ch. 125. The majority criticizes this statutory construction as "circuitous." Majority op., ¶ 36. Following a single cross-reference to find the meaning of a defined term is hardly circuitous; regardless *641 of how it is characterized, it is nonetheless the only correct interpretation.
II
¶ 46 Although the text clearly leads to the conclusion that ch. 135 applies to wine grantor-dealer relationships, the Seventh Circuit certified the question because Wis. Stat. § 135.066(2)(a) provides a seemingly contradictory definition of "[i]ntoxicating liquor."[4] This conflicting definition, however, does not override the definition of "[i]ntoxicating liquor" within Wis. Stat. § 125.02(8).
*752 ¶ 47 First, the definition of intoxicating liquor in Wis. Stat. § 135.066 contains no language suggesting that its definition applies throughout ch. 135. In contrast, the definition of "intoxicating liquor" embedded within § 135.02(3)(b) resides in the "definitions" section of ch. 135, which specifically says that the definitions apply "in this chapter"-that is, ch. 135. Because the definition of intoxicating liquor that includes wine-which is rooted in Wis. Stat. § 135.02(3)(b) -applies across the chapter, it is textually insupportable to apply § 135.066's definition of "intoxicating liquor" beyond the section it inhabits.
¶ 48 Second, in order to give effect to all the words used within ch. 135, Wis. Stat. § 135.066's definition must be limited to that particular section where it appears. Allowing § 135.066's definition to apply anywhere else would render the "[i]n this chapter" language of Wis. Stat. § 135.02 superfluous. If definitions outside of § 135.02 also applied throughout the chapter, despite the absence of express language so directing, § 135.02's language rendering its definitions applicable "in this chapter" would amount to a bootstrap provision at best, merely emphasizing, but not controlling, the operation of ch. 135's definitions. Because basic tenets of statutory construction dictate avoiding surplusage, the majority errs in its interpretation by creating overlapping definitions. See Kelley Co. v. Marquardt, 172 Wis. 2d 234, 250, 493 N.W.2d 68 (1992) (we are to construe a statute, where possible, so that no part of it is rendered superfluous); see also Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 174 (2012) ("If possible, every word and every provision is to be given effect (verba cum effectu sunt accipienda[ ] ). None should be ignored. None should needlessly be given an *753 interpretation that causes it to duplicate another provision or to have no consequence."). The majority's creation of overlapping but contradictory definitions requires it to select one and ignore the other. This consequence is objectionable but avoidable by giving effect to both definitions, as the text directs us: one applies throughout the chapter and the other applies only within its own section.
¶ 49 Third, it is Wis. Stat. § 135.02(3) that defines whether a relationship between a grantor and a dealer is a "[d]ealership." Wisconsin Stat. § 135.066 does not.
¶ 50 The majority concludes that Wis. Stat. § 135.066's definition of "[i]ntoxicating liquor" must apply across the chapter, thereby removing ch. 135's protections from the two wine distributors in this case, in order to give the definition meaning. I disagree. The definition of "[i]ntoxicating liquor" in § 135.066 retains a function even if limited to its specific section of ch. 135. It applies to the legislative findings of sub. (1), the non-applicability provisions of sub. (5), and the severability part of sub. (6).
*642 ¶ 51 The effect of confining the Wis. Stat. § 135.066(2)(a) definition of "[i]ntoxicating liquor" to § 135.066 may contravene the Governor's intention in excising wine from that definition. Regardless of what he intended in exercising his partial veto power, this is what the Governor wrote. We give effect to the text, not the intentions of its drafters. As a result, under sub. (1), the legislative findings regarding the three-tier system for distributing intoxicating liquor do not apply to wine dealerships. Subsection (5) renders § 135.066 inapplicable to certain "intoxicating liquor" dealerships whose production of "intoxicating liquor" does not exceed certain thresholds in gallons or revenue.
*754 Because wine was struck from the "intoxicating liquor" definition in § 135.066(2)(a), the non-applicability provision in sub. (5) does not apply to wine dealerships. Finally, sub. (6) makes the provisions of § 135.066 severable; under Wis. Stat. § 990.001(11), this means that if one section is declared invalid, the remaining sections shall stand unaffected. Restricting the application of the § 135.066(2)(a) definition of "intoxicating liquor" to § 135.066 may not be what the Governor intended, but it is what he left of the legislation in exercising his partial veto power. And it is the text, not intentions, that reigns supreme. State ex rel. Kalal, 271 Wis. 2d 633, ¶ 41, 681 N.W.2d 110 ("a 'policy favoring conventional meanings and general understandings over obscurely evidenced intention of the legislators is supported in the oft-repeated premise that intention must be determined primarily from the language of the statute itself' " (quoting 2A Norman J. Singer, Sutherland Statutory Construction § 45.08, at 40 (6th ed. 2000) ) ); Scalia & Garner, supra ¶ 9, at 56 ("The words of a governing text are of paramount concern, and what they convey, in their context, is what the text means.").
¶ 52 The majority emphasizes the history of these statutes before enactment by including the full text proposed by the legislature, the strikethroughs made by the Governor's veto pen, and the Governor's letter explaining the basis for his substantial edits. Placing the focus on these non-textual considerations improperly influenced the majority's statutory construction. "It is always perilous to derive the meaning of an adopted provision from another provision deleted in the drafting process." District of Columbia v. Heller, 554 U.S. 570, 590, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008). This caution applies no less to provisions deleted by the Governor exercising his veto power.
*755 ¶ 53 The majority underscores the legislature's ability to amend the law if it in fact disagreed with certain treatises' take on the effect of the Governor's partial vetoes to remove wine wholesalers from the fair dealership law. This court has explained that legislative acquiescence is a slim reed upon which to support a judicial construction of a statute because "[n]umerous variables, unrelated to conscious endorsement of a statutory interpretation, may explain or cause legislative inaction." Wenke v. Gehl Co., 2004 WI 103, ¶ 33, 274 Wis. 2d 220, 682 N.W.2d 405 ; see also Johnson v. Transp. Agency, 480 U.S. 616, 672, 107 S.Ct. 1442, 94 L.Ed.2d 615 (1987) (Scalia, J., dissenting) ("[I]t [is] impossible to assert with any degree of assurance that congressional failure to act represents (1) approval of the status quo, as opposed to (2) inability to agree upon how to alter the status quo, (3) unawareness of the status quo, (4) indifference to the status quo, or even (5) political cowardice."). Our judicial duty is to say what the law is, not to surmise meaning from legislative quiescence. Legislative inaction cannot support an interpretation of the statute that is contrary to the plain meaning of the language used in the statute.
*643 III
¶ 54 Applying a textual analysis of the language in ch. 135 leads to but one conclusion: wine distributors are wholesalers as that term is defined in Wis. Stat. § 135.02. The majority fixates on what the Governor struck from the legislation rather than what remained, thereby giving effect to what the Governor intended rather than what he actually signed into law. Reading the pertinent provisions of ch. 135 without the obfuscating portions that did not survive the Governor's veto dissolves any ambiguity. The majority *756 adopts a statutory construction that rewrites ch. 135 by subtracting language from it, rather than giving effect to every word. The majority errs. I would answer the certified question affirmatively, and therefore, respectfully dissent.
¶ 55 I am authorized to state that Justices SHIRLEY S. ABRAHAMSON and DANIEL KELLY join this dissent.

Then-Governor Tommy Thompson will subsequently be referred to as "Governor."

Wisconsin Stat. ch. 135 comprises eleven subsections. Wisconsin Stat. § 135.01 gives the title of chapter 135. Section 135.02 furnishes the definitions that apply throughout the entirety of ch. 135. Section 135.025 details the purposes of the chapter, requires liberal application to meet those purposes, and prohibits parties from contracting away ch. 135's protections. Section 135.03 explains that dealerships may not be altered or terminated without a showing of good cause. Section 135.04 imposes rules and notice deadlines for termination or changes in a dealership. Section 135.045 governs the repurchase of inventory upon termination of a dealership by the grantor. Section 135.05 discusses the applicability of arbitration agreements in ch. 135. Section 135.06 affords dealers the right to recover attorney fees and obtain injunctive relief in actions against grantors for violating ch. 135. Section 135.065 deems any violation of the chapter by a grantor an irreparable injury for purposes of seeking a temporary injunction. Section 135.066 contains legislative findings specific to intoxicating liquor dealers, defines "[i]ntoxicating liquor," renders this section inapplicable to two types of dealerships, and makes the provisions in this section severable. Section 135.07 declares ch. 135 inapplicable to motor vehicle dealers, insurance businesses, and door-to-door sales of goods or services.

Wisconsin Stat. ch. 125 specifically governs the sale of alcohol beverages in the State of Wisconsin and addresses the importance of the three-tier system of "production, distribution, and sale." See Wis. Stat. § 125.01.

Wisconsin Stat. § 135.066(2)(a) provides: " 'Intoxicating liquor' has the meaning given in s. 125.02(8) minus wine."