NATIONAL SAFETY ASSOCIATES, INC., Plaintiff-Respondent,

v.

LABOR & INDUSTRY REVIEW COMMISSION, and Wisconsin Department of Industry, Labor & Human Relations, Defendants-Appellants.

Court of Appeals

*No. 95–1053. Submitted on briefs November 10, 1995.—Decided December 28, 1995.*

(Also reported in 543 N.W.2d 584.)

For the defendants-appellants the cause was submitted on the briefs of *Peter W. Zeeh* of Madison.

For the plaintiff-respondent the cause was submitted on the brief of *Susan R. Maisa* of *Foley & Lardner* of Milwaukee.

Before Eich, C.J., Gartzke, P.J., and Vergeront, J.

VERGERONT, J. The Labor and Industry Review Commission (LIRC) and the Wisconsin Department of Industry, Labor and Human Relations (DILHR) appeal from an order reversing LIRC's determination that individuals providing services for National Safety Associates, Inc. (NSA) as distributors do not fall within the "direct seller" exclusion from the definition of "employment" in the Wisconsin Unemployment Compensation Law, § 108.02(15)(k)16, STATS. We conclude that NSA's distributors are direct sellers within the meaning of § 108.02(15)(k)16 and affirm.

## BACKGROUND

The following facts are not disputed. NSA manufactures and sells a line of water filters, air filters and

water carbonation units for the home. It markets and sells these products primarily through a direct sales organization rather than through retail outlets. NSA's sales force is comprised of two classes, dealers and distributors.

Dealers are recruited by distributors and are trained to make in-person sales calls to homeowners and small businesses to sell NSA's water treatment products. NSA's preferred sales approach is to demonstrate the product on the consumer's own water system, such as the kitchen sink. The distributors who recruit the dealers are responsible for placing all of the dealers' orders for merchandise with NSA. The dealers do not have any direct contact with NSA after they sign their initial contracts. Dealer compensation is made up of two parts. The first is the dealer's retail margin, which is the difference between the amount the dealer pays the distributor for the product and the amount the consumer pays for it. The second is a rebate, or after-the-fact discount, on the dealer's purchase price from the distributor. This rebate is based on the prior month's purchase volume. Increased purchase volume translates into increased rebates.

The second class of sellers consists of direct distributors, car qualified direct distributors, sales coordinators, fifth dimension sales coordinators, and national marketing directors (collectively referred to as "distributors"). Most of the distributors' income is made on the basis of "wholesale purchase volume to the down line." The distributors receive a percentage of inventory sales made to dealers and other distributors below them.[1] This compensation is thus not calculated based on sales made to ultimate consumers. Under

---

[1] Distributors also receive some compensation from direct sales made to ultimate consumers.

NSA's buy-back procedure, and what the parties refer to as the Wisconsin consent decree, distributors are not required to give up any compensation when inventory is returned to NSA by the dealers.

DILHR issued an initial determination determining that the individuals in NSA's sales force performed services in employment as employees, not as independent contractors, under the Wisconsin Unemployment Compensation Law, and that NSA was therefore subject to the taxing and reporting provisions of the law. NSA appealed that initial determination and, following a hearing, an administrative law judge (ALJ) affirmed DILHR's initial determination.

NSA appealed the ALJ's decision to LIRC, raising for the first time the issue of whether the services in question were excluded from the definition of employment under § 108.02(15)(k)16, STATS. Following a remand for further testimony, LIRC concluded that NSA's dealers fall within the direct seller exclusion in § 108.02(15)(k)16 because all of their compensation is based on a percentage of the sales price of in-person sales to ultimate consumers primarily in the home. However, LIRC concluded that NSA's distributors do not fall within the direct seller exclusion because their compensation is based on the amount of product sold to dealers, not on in-person sales to ultimate consumers primarily in the home. LIRC stated:

> Except for their direct sales, [distributors'] compensation is not related to any retail sales the dealers may make to ultimate consumers. While the statute clearly contemplates overrides, and other commissions paid to managerial personnel on a percentage of sales made by subordinates, the compensation in this case is not a percentage of a sale to a consumer but on a sale to a retailer. It is a wholesale sale. All

of the levels above the dealer by definition have at least partial compensation derived from wholesale sales to other dealers and distributors rather than retail sales to ultimate consumers. Therefore, they are not covered under the statute since the compensation must be <u>solely</u> from qualifying commission sales.[2]

(Emphasis in original.)

The trial court reversed. The trial court concluded that § 108.02(15)(k)16, STATS., was enacted to overrule *Princess House, Inc. v. DILHR*, 111 Wis. 2d 46, 330 N.W.2d 169 (1983), in which the supreme court held that a direct seller organization similar to NSA's was covered by the Wisconsin Unemployment Compensation Law. The trial court held that it would be inappropriate to refuse to apply the direct seller exclusion to distributors simply because the distributors' compensation is based on wholesale sales to dealers rather than retail sales by dealers.

## STANDARD OF REVIEW

Whether distributors fall within the direct seller exclusion of § 108.02(15)(k)16, STATS., presents a question of law. We are not bound by an agency's conclusions of law. *See Kelley Co. v. Marquardt*, 172 Wis. 2d 234, 244, 493 N.W.2d 68, 73 (1992). However, in some cases it is appropriate to give deference to an agency's interpretation of a statute. *Local No. 695 v. LIRC*, 154 Wis. 2d 75, 82, 452 N.W.2d 368, 371 (1990). The appellants contend that while LIRC's interpretation of § 108.02(15)(k)16 is "very nearly" one of first

---

[2] LIRC also affirmed the ALJ's determination that NSA's dealers and distributors were not independent contractors excluded from unemployment compensation coverage.

impression, it should be entitled to "great weight" because § 108.02(15)(k)16 is a tax exemption statute and because LIRC has considerable experience in interpreting exclusions from employment. We disagree.

First, appellants rely on our opinion in *Lifedata Medical Servs. v. LIRC*, 192 Wis. 2d 663, 531 N.W.2d 451 (Ct. App. 1995), for the proposition that the issue of whether workers are employees under the Unemployment Compensation Act is a tax exemption issue and, therefore, LIRC's conclusion is entitled to great weight. But *Lifedata* does not stand for this proposition. In *Lifedata*, we simply held that because LIRC had extensive experience in interpreting the statutory provision at issue, general expertise in applying the statutory provision to very similar situations, and because the legal question was intertwined with factual determinations and policy, we would give its interpretation of § 108.02(12), STATS., "great weight." *Id.* at 671-72, 531 N.W.2d at 454-55.

Second, although the appellants point to two LIRC decisions addressing § 108.02(15)(k)16, STATS., both involved situations where sales representatives were determined not to fall within the direct seller exclusion because their remuneration was based on commissions and draws, not solely on commissions as § 108.02(15)(k)16 requires. LIRC has not presented any prior decisions involving the issue presented on this appeal.

We conclude that whether or not distributors fall within the exclusion is one of first impression. We therefore review the issue de novo. *See Kelley Co.*, 172 Wis. 2d at 245, 493 N.W.2d at 73 (de novo review is applied when the case is clearly one of first impression

for the agency and the agency lacks special expertise or experience in determining the question presented); *Butzlaff v. Wisconsin Personnel Comm'n,* 166 Wis. 2d 1028, 1031-32, 480 N.W.2d 559, 560 (Ct. App. 1992) ("a court will give deference to an agency's interpretation of a statute where the regular and repeated interpretations of the statute have been applied in practice over a period of time by the agency charged with the duty of administering the statute, and the agency is therefore presumed to have some special expertise").

## DISCUSSION

Section 108.02(15)(k)16, STATS., excludes from the definition of "employment" services provided:

> By an individual whose remuneration consists solely of commissions, overrides, bonuses or differentials directly related to sales or other output derived from in-person sales to or solicitation of orders from ultimate consumers, primarily in the home.

The appellants contend that in order to qualify for the exclusion under § 108.02(15)(k)16, STATS., an individual's compensation must be directly related to sales and that such sales must be to ultimate consumers in the home. Accordingly, in appellants' view, distributors do not qualify because their compensation is not directly related to sales made to ultimate consumers in the home, but rather to wholesale sales made to dealers.[3]

---

[3] The appellants acknowledge that distributors do make some sales directly to consumers in the home and that their compensation based on these sales is directly related to sales to ultimate consumers primarily in the home within the meaning of § 108.02(15)(k)16, STATS. However, appellants point out that

NSA, in contrast, argues that a distributor's sales of NSA products to his or her dealers fall within the phrase "sales or other output" and that a distributor's remuneration consists of commissions and overrides directly related to these "sales or other output." NSA contends that a distributor's remuneration from these sales or other output is indirectly "derived from" in-person sales to or solicitation of orders from ultimate consumers primarily in the home because the remuneration "has its source in [the dealers'] sales or solicitations." According to NSA, even the commissions and overrides a distributor earns on sales of NSA products to dealers that are not eventually sold to consumers in the home (*i.e.* samples) are derived from in-person sales to or solicitation of orders from ultimate consumers, primarily in the home, because samples are used by dealers in the "solicitation of orders" from ultimate consumers primarily in the home.

We conclude that both interpretations are reasonable and that the statute is therefore ambiguous. *See State v. Martin*, 162 Wis. 2d 883, 894, 470 N.W.2d 900, 904 (1991) (a statute is ambiguous if it is capable of being understood by reasonably well-informed persons in two or more different senses). When construing an ambiguous statute, we may rely on extrinsic aids to ascertain the intent of the legislature, including the statute's scope, history, context, subject matter and object. *Tahtinen v. MSI Ins. Co.*, 122 Wis. 2d 158, 166, 361 N.W.2d 673, 677 (1985).

One extrinsic aid is the federal "direct seller" statute, 26 U.S.C. § 3508, which both parties rely on in support of their respective interpretations of

the statute requires that an individual's compensation be *solely* from qualifying commission sales.

§ 108.02(15)(k)16, STATS. 26 U.S.C. § 3508 excludes from employment for purposes of federal unemployment taxes services provided by a direct seller. The term "direct seller" is defined under 26 U.S.C. § 3508(b)(2) as follows:

The term "direct seller" means any person if—

(A)   such person
(i)   is engaged in the trade or business of selling (or soliciting the sale of) consumer products to any buyer on a buy-sell basis, a deposit-commission basis, or any similar basis which the Secretary prescribes by regulations, for resale (by the buyer or any other person) in the home or otherwise than in a permanent retail establishment, or
(ii)   is engaged in the trade or business of selling (or soliciting the sale of) consumer products in the home or otherwise than in a permanent retail establishment,

(B)   substantially all the remuneration (whether or not paid in cash) for the performance of the services described in subparagraph (A) is directly related to sales or other output (including the performance of services) rather than to the number of hours worked . . . .

Appellants acknowledge that under the federal statute, NSA's distributors are direct sellers and excluded from employment because they are engaged in the sale of consumer products on a buy-sell basis to a buyer for resale in the home, and substantially all of their remuneration is directly related to sales or other output rather than to the number of hours worked. However, appellants argue that Wisconsin's statute is narrower than the federal statute. The appellants contend:

116

The federal provision also provides the remuneration must be directly related to sales or other output, but does not require the remuneration to be directly related to sales or other output derived from in-person sales to or solicitation of orders from ultimate consumers in the home. It could be sales or other output in connection with a wholesale sale. That is a key difference from the Wisconsin statute.

We disagree. First, the parties agree that 26 U.S.C. § 3508 was brought to the attention of the legislature in enacting § 108.02(15)(k)16, STATS. Second, significant portions of the state statute are lifted directly from the federal statute, including the phrase, "directly related to sales or other output." Third, the Legislative Reference Bureau's analysis of the statute refers to the federal law, recognizes that Wisconsin does not have a similar provision, and points out that while state law includes for state unemployment tax purposes all employment taxed by federal law, the employment of covered employees is subject to state unemployment compensation taxes regardless of whether the employment is subject to federal unemployment taxes.[4] There is no indication in the analysis

---

[4] The Legislative Reference Bureau's analysis of § 108.02 (15)(k)16, STATS., states in part:

> Currently, federal law excludes from federal unemployment taxes the wages of certain direct sellers of consumer products who are paid substantially on a commission basis and who agree not to be considered employes for federal tax purposes. Federal law also excludes from these taxes the wages of independent contractors providing goods or services who are free of the direction or control of an employer (determined in accordance with common law rules for determining principal and agent relationships). State law includes for state unemployment tax purposes all employment taxed by federal law. Under state law, self-employed individuals and independent contractors are generally excluded from unem-

that the legislature intended to adopt a narrower direct seller exclusion than that provided in the federal statute. An official statement from a legislative source is evidence of legislative intent. *See Ball v. District No. 4, Area Bd.*, 117 Wis. 2d 529, 543, 345 N.W.2d 389, 396 (1984).

While it is true that only the state statute includes the language "derived from in-person sales to or solicitation of orders from ultimate consumers, primarily in the home," we interpret this as an abbreviated version of the federal statute's requirement that the consumer goods must ultimately be sold to the consumer in the home, rather than in a permanent retail establishment, and that substantially all of a seller's remuneration must be directly based on sales or other output, rather than on the number of hours worked. We do not agree with appellants that this language should be interpreted as requiring that a distributor's remuneration be based on the number of sales made to consumers in the home, rather than on wholesale sales made to dealers. The term "derive" is defined in THE AMERICAN HERITAGE COLLEGE DICTIONARY 375 (3d ed. 1993) as, "To obtain or receive from a source." The source of NSA's distributors' sales is the in-person sales to, or solicitation of orders from, ultimate consumers in the home because the amount a distributor sells to his or her dealers is determined by the amount of sales by dealers to ultimate consumers in the home. The more the dealer sells, the more the dealer will purchase from the distributor.

---

ployment compensation coverage, if services are performed in an independently established trade, business or profession free from direction or control of an employer. Employment of covered employes is subject to state unemployment compensation taxes regardless of whether the employment is subject to federal unemployment taxes.

A second piece of extrinsic evidence that aids our analysis is the statute's history. The parties agree that § 108.02(15)(k)16, STATS., was designed to overrule *Princess House, Inc. v. DILHR*, 111 Wis. 2d 46, 330 N.W.2d 169 (1983).[5] Princess House was a direct seller using a party plan to sell household products, principally glassware. It sold its products through dealers who signed contracts pursuant to which Princess House would sell its products to the dealers for resale. Dealers were compensated by being paid the difference between wholesale and retail price. The company's products were delivered, cash on delivery, to the dealers or anyone else he or she designated. The company retained the price charged to the dealer and remitted the balance to the dealer. *Id.* at 56, 330 N.W.2d at 174. Individual dealers could also recruit other dealers, in which case they would receive a percentage of sales made by their recruits. Unit organizer dealers were paid 7.5 percent of the sales made by dealers in their units. Area organizer dealers were paid 16 percent of the sales made by dealers under them. *Id.* at 57-58, 330 N.W.2d at 175.

The Wisconsin Supreme Court found that Princess House was subject to the provisions of the Wisconsin Unemployment Compensation Act because, although its dealers were not subject to Princess House's control, they were employees because their services were not performed in an independently established business in which the dealers were customarily engaged.

The appellants acknowledge that § 108.02(15)(k)16, STATS., was intended to overrule

[5]*Princess House, Inc. v. DILHR*, 111 Wis. 2d 46, 330 N.W.2d 169 (1983), was decided on March 1, 1983. A bill containing the language in § 108.02(15)(k)16, STATS., was passed on April 15, 1983. *See* 1983 Wis. Act 8, § 7.

*Princess House*. But they argue that in *Princess House*, all of the dealers, including unit organizer dealers and area organizer dealers, were compensated based on sales to ultimate consumers, whereas here distributors receive compensation based on wholesale sales to those under them, not on retail sales. Appellants agree that if the distributors received their compensation based on sales made by dealers to ultimate consumers, as did the unit organizer dealers and area organizer dealers in *Princess House*, they would fall within the § 108.02(15)(k)16 exclusion. However, they stress that in NSA's case, if merchandise is never sold at retail, but is instead returned by dealers, the distributors retain their compensation.

It is true that the *Princess House* unit organizer dealers and area organizer dealers, unlike NSA distributors, were compensated based on sales to ultimate consumers. However, appellants have not explained why this distinction is important. Both Princess House and NSA are direct sellers. The companies have similar sales structures and compensate their sellers on a commission or percentage basis. NSA's general counsel testified that the reason its distributors' compensation is calculated on the basis of wholesale sales, as opposed to the dealers' actual sales to consumers, is purely practical convenience, as NSA and its distributors know what dealers have purchased, but they do not know what the dealers have sold.

Appellants' narrow interpretation of *Princess House* and the statute would unreasonably distinguish between a distributor who sells products to dealers in advance of customer orders and a distributor who is compensated only after a product is sold by a dealer to a consumer. In both cases, the distributor is engaged in the sale of consumer products for resale in the home

and his or her remuneration is directly related to the amount of sales made, rather than hours worked.

We conclude that NSA distributors fall within the direct seller exclusion in § 108.02(15)(k)16, STATS., and affirm the order of the trial court.

*By the Court.*—Order affirmed.