COURT OF APPEALS
DECISION
DATED AND FILED

July 23, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1013**

STATE OF WISCONSIN

Cir. Ct. No. 2023CV1100

IN COURT OF APPEALS
DISTRICT II

---

ABBY WINDOWS, LLC,

PETITIONER-RESPONDENT,

V.

LABOR & INDUSTRY REVIEW COMMISSION,

RESPONDENT-APPELLANT,

WIS. DEPT. OF WORKFORCE DEVELOPMENT UI DIVISION,

RESPONDENT-CO-APPELLANT,

DANIEL R. TARPEY,

RESPONDENT.

---

APPEAL from an order of the circuit court for Waukesha County: MICHAEL J. APRAHAMIAN, Judge. *Affirmed*.

Before Gundrum, P.J., Grogan, and Lazar, JJ.

¶1    GROGAN, J.   LIRC[1] and DWD[2] appeal from the circuit court order reversing LIRC's decision, which determined that Daniel Tarpey was eligible for unemployment insurance (UI) benefits based on his work for Abby Windows, LLC.  LIRC had concluded that Tarpey's work for Abby Windows as a salesman of various home-improvement type products such as windows, doors, and siding did not fall within the exclusion from "employment" set forth in WIS. STAT. § 108.02(15)(k)16 (2023-24).[3]   We conclude Tarpey sold "consumer products" and that the work he performed for Abby Windows falls within § 108.02(15)(k)16's exclusion from employment; accordingly, Tarpey is not entitled to UI benefits.  We reverse LIRC's decision and affirm the circuit court's order.

## I.  BACKGROUND

¶2    Tarpey performed work as a Sales and Design Consultant for Abby Windows, an exterior renovation company, for approximately one year beginning in early 2022 and ending in early 2023.[4]   During that time, Tarpey "went into prospective customer's homes and sold doors, windows, roofs, gutters, and siding."  He did not, however, sell stand-alone products—rather, his sales included

---

[1] LIRC is the acronym for the Labor and Industry Review Commission.

[2] DWD is the acronym for the Department of Workforce Development.

[3] All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

[4] The facts recited herein come primarily from LIRC's decision and the materials and testimony presented at the appeal hearing before DWD's administrative law judge.

installation of the products purchased. Abby Windows paid Tarpey on a commission basis for each sale—specifically, he received a ten percent commission on the total sale price with half being paid at the outset and the other half being paid after the customer paid in full. It is undisputed that Abby Windows paid Tarpey solely on a commission basis; however, LIRC asserts that Tarpey's commission was at least in part for installation services and therefore not "substantially" related to the sale of "consumer products." It is also apparently undisputed that Tarpey performed his work by going to prospective customers' homes and that he did not work in or from an established retail office.[5]

¶3      Following a sequence of events not specifically relevant on appeal, Abby Windows informed Tarpey in January 2023 that his services were no longer required, and Tarpey thereafter filed for UI benefits. DWD initially determined that the work Tarpey performed for Abby Windows was qualifying employment under WIS. STAT. ch. 108 and that Tarpey was eligible to receive UI benefits. Abby Windows appealed that determination, however, and an appeal hearing was held before a DWD administrative law judge (ALJ) in March 2023.

¶4      During the appeal hearing, the ALJ heard testimony about, inter alia, the type of work Tarpey performed on Abby Windows' behalf, the nature of the products he sold, and how he was paid for the work he performed. The ALJ also heard testimony from Abby Windows explaining that Tarpey held a "direct seller" position, that he received a 1099 form, and that Abby Windows had checked the box for "excluded employment" on a DWD "Request for Wages" form regarding

---

[5] Tarpey also attended various "meetings and trainings and performed" tasks "such as picking up checks from homeowners[,]" although he was not paid for doing so.

3

Tarpey's work. In a written decision, the ALJ concluded that WIS. STAT. § 108.02(15)(k)16 applied to exclude the work Tarpey performed for Abby Windows from the definition of "employment" because the products he sold were "consumer products" that he sold door-to-door on a commission basis. In concluding that Tarpey sold "consumer products," the ALJ relied on the definition of "consumer product" set forth in 15 U.S.C § 2301(1).[6] Consequently, the ALJ determined Tarpey was ineligible for unemployment insurance benefits based on the work he performed for Abby Windows and reversed the initial determination.[7]

¶5 Tarpey filed an appeal with LIRC challenging the ALJ's conclusion. In his LIRC appeal brief, Tarpey argued that he sold "home improvements, not 'consumer products for use, sale or resale by the buyer'" and that "home improvements" do not fall within WIS. STAT. § 108.02(15)(k)16 because "home improvements" refers to "the sale of labor and materials for home improvement projects[.]" (Emphases omitted.) Tarpey also asserted that the "home improvement projects" he sold "involved extensive labor and materials for home

---

[6] Title 15 of the United States Code governs "Commerce and Trade," and Chapter 50, the chapter of Title 15 in which § 2301 is found, governs "Consumer Product Warranties." *See* 15 U.S.C. § 2301. Section 2301 defines "'consumer product'" as meaning "any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes (including any such property intended to be attached to or installed in any real property without regard to whether it is so attached or installed)." 15 U.S.C. § 2301(1). Black's Law Dictionary references 15 U.S.C. § 2301(1) in its definition of "consumer product." *See Consumer Product*, BLACK'S LAW DICTIONARY (12th ed. 2024).

[7] The appeal hearing notice identified two potential issues to be addressed at the hearing: (1) whether Tarpey "perform[ed] services in covered employment" under WIS. STAT. § 108.02(15); and (2) whether Tarpey "perform[ed] services as an employee" under WIS. STAT. §§ 108.02(12) and 108.068. (Formatting altered.) The ALJ's written decision did not address the second issue, however, presumably because the ALJ determined that Tarpey did not perform services that fell within the definition of "employment." We note that LIRC remanded Tarpey's UI benefit claim to DWD for further investigation of the second noticed issue following its reversal of the ALJ's decision, and that issue is not before us on appeal.

improvement work such as the installation of new roofs, windows and doors" and contrasted what he sold with "consumer products[,]" which he said "are typically consumable and do not increase the value of, nor extend the life of, residential real estate." According to Tarpey, the ALJ erred in ignoring this distinction, as well as in relying on 15 U.S.C. § 2301(1), because doing so caused the ALJ to "ignore[] the true nature of the sales and the fact that the sales were never limited to just the sale of 'tangible personal property.'"

¶6    As an alternative to 15 U.S.C. § 2301(1), Tarpey suggested that LIRC look to 15 C.F.R. § 16.3 (2024) in defining what constitutes a "consumer product" because that section provides, as relevant, that "consumer product means any article produced or distributed for sale to a consumer for the use, consumption, or enjoyment of such consumer." *See* 15 C.F.R. § 16.3(d) (emphasis omitted). Tarpey, seemingly based on his categorization of his sales as being for "home improvements," also pointed to the definition of "home improvement" set forth in WIS. ADMIN. CODE § ATCP 110.01(2) (Nov. 2024) and the examples of "tangible personal property" listed in the Wisconsin Department of Revenue website, explaining that the Department of Revenue's "definition of tangible personal property does not mention labor, installation or home improvement projects." In essence, Tarpey used these definitions to support his assertion that the "home improvement projects" he sold do not fall within WIS. STAT. § 108.02(15)(k)16 because "tangible personal property can be moved from one location to another" and "has weight, and it can be measured" whereas the "home improvement projects" he sold clearly did not share these attributes.

¶7    In its brief before LIRC, Abby Windows argued that the ALJ's decision was correct because the work Tarpey performed fell within WIS. STAT. § 108.02(15)(k)16's "'direct seller' exclusion[.]" Like the ALJ, Abby Windows

took the position that 15 U.S.C. § 2301(1)'s definition of "consumer products" is controlling. Abby Windows further relied on *National Safety Associates, Inc. v. LIRC*, 199 Wis. 2d 106, 543 N.W.2d 584 (Ct. App. 1995), for the general premise that it is appropriate to consider federal law in determining the meaning of "consumer products" because in *National Safety Associates*, we looked to federal law—specifically, 26 U.S.C. § 3508(b)(2) (the federal direct seller statute)—to interpret a different phrase in an earlier version of § 108.02(15)(k)16.

¶8 In a written decision, LIRC determined that the ALJ erred in concluding that the work Tarpey performed fell within WIS. STAT. § 108.02(15)(k)16's exclusion from employment and reversed the ALJ's decision. In reaching this conclusion, LIRC explained that "[t]he question is whether [Tarpey's] sales were 'of consumer products for use, sale, or resale by the buyer[,]'" noted that WIS. STAT. ch. 108 "does not provide a definition for the term consumer products[,]" and rejected the definition of "consumer product" set forth in WIS. STAT. § 100.42 because it arose in a different context. LIRC then went on to cite *National Safety Associates* and explained that there, "the court found that the legislature intended to adopt a provision similar in scope to that found in 26 U.S.C. § 3508" and that "[t]he legislative history for the 2013 Act updating the Wisconsin statute indicates a further intent to mirror language found in 26 U.S.C. § 3508." However, LIRC noted, the federal statutes do not appear to "provide a clear answer for the meaning of the phrase consumer products" and that "[t]here are at least four different definitions for the term in different federal statutes, none of which are clearly applicable to unemployment insurance or tax law." In light of this lack of clarity, LIRC was "not persuaded that any of these definitions" were definitive as to the meaning of "consumer products" within the meaning of § 108.02(15)(k)16.

¶9 Having essentially rejected the possible definitions set forth in various federal statutes, LIRC next turned to *Cleveland Institute of Electronics, Inc. v. United States*, 787 F. Supp. 741, 746-47 (N.D. Ohio 1992), a case in which the court looked to the legislative intent in enacting 26 U.S.C. § 3508, to construe the meaning of "consumer product." LIRC, following suit, turned to the legislative intent behind the enactment of and later amendment to WIS. STAT. § 108.02(15)(k)16 and noted first that § 108.02(15)(k)16 "is an exclusionary provision" because it excludes certain workers from being eligible for UI benefits and second that WIS. STAT. ch. 108 "is to be 'liberally construed to effect unemployment compensation coverage for workers who are economically dependent upon others in respect to their wage-earning status.'" (Citation omitted.) Thus, it said, § 108.02(15)(k)16 is to "be narrowly construed."

¶10 In considering WIS. STAT. § 108.02(15)(k)16's legislative history, LIRC concluded that "the types of sales the Wisconsin legislature intended to include when it enacted" § 108.02(15)(k)16 were "sales of products from 'producers such as Avon Products Inc., Amway, Mary Kay Inc., and Pampered Chef' made by 'micro-entrepreneurs working part-time to earn extra income.'"[8] According to LIRC, sales of those types of products are distinguishable from the sales Tarpey made because those "products are packaged and distributed for use, as delivered, by the purchaser" whereas Tarpey "made sales of installed construction materials." While acknowledging that Tarpey's sales included products "such as windows, doors, roofing materials, siding, and gutters[,]" LIRC

---

[8] *See* Hearing Materials, Assembly Committee on Labor (Oct. 23, 2013), available at https://docs.legis.wisconsin.gov/misc/lc/hearing_testimony_and_materials/2013/ab449/ab0449_2013_10_23.pdf.

7

said that the sales *also* included "professional installation by crews with specialized knowledge and tools" and that "[t]he materials [Tarpey sold] were not intended to be used by the homeowners prior to the professional installation." Accordingly, LIRC determined that § 108.02(15)(k)16 did not exclude the work Tarpey performed because Tarpey sold "construction materials and professional installation services, not consumer products."

¶11     Abby Windows thereafter sought review in the circuit court pursuant to WIS. STAT. § 108.09(7).  The parties filed briefs in the circuit court and in a written decision, the court explained that the question of "whether products such as doors, roofs, windows, gutters, and siding constitute 'consumer products'" within the meaning of WIS. STAT. § 108.02(15)(k)16 is "an issue of first impression" and that the only issue in dispute related to the interpretation of "consumer products."  Because WIS. STAT. ch. 108 does not define "consumer products," the court, relying on *Sanders v. State of Wisconsin Claims Board*, 2023 WI 60, ¶¶14-16, 408 Wis. 2d 370, 992 N.W.2d 126, determined that the first step in interpreting "consumer products" was to confirm whether the phrase has "a peculiar meaning in the law" and that the answer to that question would inform whether it should turn to a legal or non-legal dictionary to define the phrase.

¶12     After concluding that "consumer products" is not defined in non-legal dictionaries, the circuit court determined that it must necessarily be a phrase with "a peculiar meaning in the law, or rather, several peculiar meanings in the law," and that it was therefore required to "consult a legal dictionary."  Next, the court turned its attention to Black's Law Dictionary, which defines "consumer product" as "[a]n item of personal property that is distributed in commerce and is normally used for personal, family, or household purposes.   15 U.S.C.A. § 2301(1)."  *See Consumer Product*, BLACK'S LAW DICTIONARY (12th ed. 2024).

Based on the reference to 15 U.S.C. § 2301(1), the court turned to that statute and noted that it "mirror[ed]" the Black's Law Dictionary definition but also "contain[ed] an additional parenthetical" stating that the definition of "consumer product" "includ[es] any such property intended to be attached to or installed in any real property without regard to whether it is so attached or installed." *See id.* Based primarily on the Black's Law Dictionary definition and the parenthetical in 15 U.S.C. § 2301(1)—and with some consideration given to how other statutes defined phrases such as "consumer products," "tangible personal property," and "personal property"—the court concluded that the "doors, roofs, windows, gutters, and siding" that Tarpey sold fell within the Black's Law Dictionary definition, particularly when viewed in conjunction with the parenthetical to the federal statute referenced therein, and that § 108.02(15)(k)16's exclusion therefore applied.

¶13 In reaching this conclusion, the circuit court acknowledged that the definition was broad and seemingly conflicted with WIS. STAT. ch. 108's public policy of liberal statutory construction. The court explained, however, that an interpretation that ultimately excludes a greater number of individuals from being eligible for UI benefits was not "absurd or unreasonable[,]" particularly where the legislature chose to provide for such an exclusion. Finally, the court explained that it was unnecessary to turn to the *legislative* history the parties had relied upon given its conclusion that the statutory analysis was plain and clear. However, it did consider WIS. STAT. § 108.02(15)(k)16's *statutory* history and explained that the 2013 addition of "consumer products" to the statutory language "did not result in any material change in the statute, and it should therefore be understood in the same sense as the original[.]" Accordingly, the court concluded that the products

9

Tarpey sold fell within § 108.02(15)(k)16's exclusion from employment and reversed LIRC's decision.

¶14 LIRC and DWD now appeal.[9]

## II. STANDARD OF REVIEW

¶15 On appeal, we review LIRC's decision rather than that of the circuit court. **Bevco Precision Mfg. Co. v. LIRC**, 2024 WI App 54, ¶7, 413 Wis. 2d 668, 12 N.W.3d 552, *review denied*, 2025 WI 8, 18 N.W.3d 710; **Mevrosh v. LIRC**, 2010 WI App 36, ¶7, 324 Wis. 2d 134, 781 N.W.2d 236. Pursuant to WIS. STAT. § 108.09(7)(c)6, we may set aside LIRC's order only upon the specified grounds listed therein, including a determination "[t]hat [LIRC] acted without or in excess of its powers." *See* § 108.09(7)(c)6.a; **Bevco**, 413 Wis. 2d 668, ¶7. "LIRC acts 'without or in excess of its powers' if it bases an order on an incorrect interpretation of a statute." **Amazon Logistics, Inc. v. LIRC**, 2023 WI App 26, ¶18, 407 Wis. 2d 807, 992 N.W.2d 168, *review dismissed as improvidently granted*, 2024 WI 15, 411 Wis. 2d 166, 4 N.W.3d 294; **DWD v. LIRC**, 2018 WI 77, ¶12, 382 Wis. 2d 611, 914 N.W.2d 625.

¶16 We do not give deference to an administrative agency's legal conclusions, including the agency's statutory interpretation, which presents a question of law we review de novo. *See* **Bevco**, 413 Wis. 2d 668, ¶10; **Tetra Tech EC, Inc. v. DOR**, 2018 WI 75, ¶84, 382 Wis. 2d 496, 914 N.W.2d 21 ("[W]e will review an administrative agency's conclusions of law under the same standard we

---

[9] Although Tarpey participated in briefing before the circuit court, he has not filed a brief or joined any other party's brief on appeal.

apply to a circuit court's conclusions of law—de novo."). We will accept LIRC's factual findings so long as "'they are supported by substantial and credible evidence.'" *Operton v. LIRC*, 2017 WI 46, ¶18, 375 Wis. 2d 1, 894 N.W.2d 426 (citation omitted). "[U]nder the 'substantial evidence' standard, we will accept a factual conclusion that reasonable minds *could* reach after considering all of the evidence." *Bevco*, 413 Wis. 2d 668, ¶8 (citing *Wisconsin Bell, Inc. v. LIRC*, 2018 WI 76, ¶30, 382 Wis. 2d 624, 914 N.W.2d 1); *see also* WIS. STAT. § 108.09(7)(c)1 ("The findings of fact made by the commission acting within its powers shall, in the absence of fraud, be conclusive.").[10]

## III.  DISCUSSION

¶17    This appeal requires interpretation of WIS. STAT. § 108.02(15)(k)16, which excludes the following from the definition of "employment":

> "Employment" as applied to work for a given employer other than a government unit or nonprofit organization, except as the employer elects otherwise with the department's approval, does not include service:
>
> ….

---

[10] LIRC asserts that we should afford its legal conclusions due weight. In making this assertion, LIRC points to an apparent inconsistency between *Mueller v. LIRC*, 2019 WI App 50, ¶17, 388 Wis. 2d 602, 933 N.W.2d 645, and *Anderson v. LIRC*, 2021 WI App 44, ¶11 n.5, 398 Wis. 2d 668, 963 N.W.2d 89, regarding the issue of whether we are to give LIRC's legal conclusions due weight given that our review arises under WIS. STAT. ch. 108 rather than WIS. STAT. ch. 227. *See Amazon Logistics, Inc. v. LIRC*, 2023 WI App 26, ¶¶23-24, 407 Wis. 2d 807, 992 N.W.2d 168, *petition for review dismissed as improvidently granted*, 2024 WI 15, 411 Wis. 2d 166, 4 N.W.3d 294. We need not resolve this dispute here, however, because LIRC largely failed to apply the well-known statutory interpretation framework in reaching its decision, and we therefore do not accord its analysis deference, and moreover, because we review conclusions of law de novo. *See id.*, ¶24 (explaining that "because … we review LIRC's conclusions of law de novo[,]" "'our conclusions remain the same'" regardless of whether or not we afford LIRC's interpretation due weight (citation omitted)).

16. By an individual who is engaged, in a home or otherwise than in a permanent retail establishment, in the service of selling or soliciting the sale of consumer products for use, sale, or resale by the buyer, if substantially all of the remuneration therefor is directly related to the sales or other output related to sales rather than to hours worked[.]

*Id.* The parties do not dispute that certain aspects of this statute apply to the work Tarpey performed—specifically, it is undisputed that Tarpey did not perform work "in a permanent retail setting" or that his compensation was commission based on sales rather than based on the hours he worked.[11] What the parties do dispute, however, is whether Tarpey sold "consumer products for use, sale, or resale by the buyer[.]" *See id.* To determine whether Tarpey was eligible for UI benefits, we must therefore determine what constitutes a "consumer product" within the meaning of § 108.02(15)(k)16.

¶18 On appeal, LIRC acknowledges the general statutory interpretation framework set forth in *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, 271 Wis. 2d 633, 681 N.W.2d 110; however, it emphasizes that we should focus on WIS. STAT. § 108.02(15)(k)16's "context and purpose" and says that pursuant to *Kalal*, "a plain-meaning interpretation of statutory wording cannot contradict the statute's purpose as manifested by its intrinsic context, including explicit statements of legislative purpose[.]" *See Kalal*, 271 Wis. 2d 633, ¶¶48-49. Applying these principles, LIRC says that because § 108.02(15)(k)16 provides for an exception to UI benefit eligibility, it should be interpreted narrowly and in favor of eligibility given that WIS. STAT. ch. 108 is to be liberally construed.

---

[11] LIRC asserts in its appellate brief, however, that Abby Windows failed to establish that "substantially all" of the commission Tarpey received was tied to the sale of "consumer products" because, it says, Tarpey also sold services. *See* WIS. STAT. § 108.02(15)(k)16.

¶19    As it relates to actually interpreting WIS. STAT. § 108.02(15)(k)16, LIRC says we should not rely on the definition of "consumer product" set forth in Black's Law Dictionary because it is pulled from but one of many definitions of "consumer product" set forth in federal statutes, including one that the court rejected in *Cleveland Institute*, 787 F. Supp. 741, when it was tasked with construing the meaning of "consumer products" under the federal direct seller statute, 26 U.S.C. § 3508.

¶20    LIRC also says that based on our opinion in *National Safety Associates*, which found that a different phrase in a prior version of WIS. STAT. § 108.02(15)(k)16 was ambiguous, it was reasonable for it to turn to federal law here, particularly 26 U.S.C. § 3508, in construing the meaning of "consumer products" as used in § 108.02(15)(k)16. LIRC likewise argues it was reasonable for it to turn to legislative history, from which it determined that in amending § 108.02(15)(k)16 to its current iteration, the legislature intended for the exclusion to apply only to "products packaged and distributed for use, as delivered, by the purchaser." In contrast, it says, the products Tarpey sold—"windows, gutters, roofing materials, etc."—were not products the buyer could use until they had been "installed in the buyer's house as part of a renovation project[,]" and moreover, because the sale included "installation of building materials into a house by craftsmen or skilled labor[,]" Tarpey's sales were readily distinguishable from those at issue in *Cleveland Institute*. Finally, LIRC argues that at the very least, Tarpey's sales were for goods *and* services, and we must therefore apply the "predomina[nt] purpose" test to determine whether Tarpey sold a product or a service.

¶21    Abby Windows argues that LIRC disregarded *National Safety Associates*, which it says is binding precedent (despite also arguing that this matter

13

presents an issue of first impression) as to "the interpretation of the direct seller exclusion[.]"[12]   According to Abby Windows, because the *National Safety Associates* court determined a prior version of WIS. STAT. § 108.02(15)(k)16 was ambiguous and therefore looked to the federal direct seller statute for guidance, that federal guidance is, in essence, baked into § 108.02(15)(k)16, and we should therefore not interpret it more narrowly than the federal statute.  Abby Windows also asserts that the 2013 revision to WIS. STAT. § 108.02(15)(k)16 did not limit the exception to "household goods[.]"  *See* 2013 Wis. Act 104, § 1.

¶22   Unlike LIRC, Abby Windows suggests that Black's Law Dictionary *does* provide an appropriate definition of "consumer product" within the meaning of WIS. STAT. § 108.02(15)(k)16.   According to Abby Windows, that multiple federal statutes define "consumer product" in various ways indicates that "consumer product" has a peculiar legal meaning and that we should therefore consult a legal dictionary.   And, it says, because the Black's Law Dictionary definition of "consumer products" references one of those federal statutory definitions—15 U.S.C. § 2301(1)—we should apply that definition and conclude that § 108.02(15)(k)16 is unambiguous and that Tarpey sold "consumer products." Abby Windows also argues that it is unnecessary to consult legislative history because § 108.02(15)(k)16 is unambiguous and that LIRC erred in doing so. Moreover, it says, even if we were to consult legislative history, that history would show that the legislature was not solely focused on sales from companies such as

---

[12] While Abby Windows argues that LIRC "refus[ed]" to apply *National Safety Associates, Inc. v. LIRC*, 199 Wis. 2d 106, 543 N.W.2d 584 (Ct. App. 1995), it is not entirely clear what exactly Abby Windows believes LIRC failed to apply given that *National Safety Associates* focused on the compensation-based requirement in construing a pre-2013 version of WIS. STAT. § 108.02(15)(k)16 that did not contain the phrase "consumer products." *See National Safety Assocs.*, 199 Wis. 2d at 114-15.

Amway, Mary Kay, and Avon, as LIRC suggests, but rather that the legislature was *also* aware of direct sales companies that sold products such as satellite televisions and home security that would require some element of installation service. According to Abby Windows, this suggests that "[h]ad the legislature intended to limit the direct seller exception to those workers who sell goods only (or, indeed, tangible goods only), it had a prime opportunity to do so with relatively little additional effort."

¶23 Having reviewed the parties' briefs, the Record, and the relevant law, for the reasons that follow, we conclude that WIS. STAT. § 108.02(15)(k)16 applies to exclude Tarpey from eligibility for UI benefits.

¶24 "As with every statutory interpretation case, we begin with the statutory text[,]" *State v. Brott*, 2023 WI App 45, ¶12, 409 Wis. 2d 96, 996 N.W.2d 78, *review denied*, 2024 WI 12, 6 N.W.3d 875, and the framework we apply in interpreting statutory language is well known and oft repeated. When reviewing statutory language, appellate courts "ascertain and apply the plain meaning of the statutes as adopted by the legislature." *White v. City of Watertown*, 2019 WI 9, ¶10, 385 Wis. 2d 320, 922 N.W.2d 61. "[S]tatutory interpretation 'begins with the language of the statute[,]'" and the "language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Kalal*, 271 Wis. 2d 633, ¶¶45-46 (citation omitted) ("Context is important to meaning. So, too, is the structure of the statute in which the operative language appears. Therefore, statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results."). "To determine common and approved usage, we consult

dictionaries." *Sanders*, 408 Wis. 2d 370, ¶14; *State v. McKellips*, 2016 WI 51, ¶32, 369 Wis. 2d 437, 881 N.W.2d 258. "To determine the meaning of legal terms of art, we consult legal dictionaries." *Sanders*, 408 Wis. 2d 370, ¶14.

¶25 A statute is unambiguous if the foregoing interpretative process "'yields a plain, clear statutory meaning[.]'" *Kalal*, 271 Wis. 2d 633, ¶46 (citation omitted). If a statute "is unambiguous, there is no need to consult extrinsic sources of interpretation, such as legislative history." *Id.* "[A] statute is ambiguous if it is capable of being understood by reasonably well-informed persons in two or more senses." *Id.*, ¶47. "[D]isagreement about the statutory meaning" "is not enough" to render a statute ambiguous. *Id.* Rather, "the test for ambiguity examines the" statutory language "to determine whether 'well-informed persons *should have* become confused,' that is, whether the statutory … language *reasonably* gives rise to different meanings." *Id.* (citation omitted; omission in original).

¶26 Wisconsin's unemployment compensation law "embodi[es] a strong public policy in favor of compensating the unemployed[,]" and this policy is set forth in WIS. STAT. § 108.01. *See Operton*, 375 Wis. 2d 1, ¶31. "Consistent with this policy, WIS. STAT. ch. 108 is 'liberally construed to effect unemployment compensation coverage for workers who are economically dependent upon others in respect to their wage-earning status.'" *Operton*, 375 Wis. 2d 1, ¶32 (quoting *Princess House, Inc. v. DILHR*, 111 Wis. 2d 46, 62, 330 N.W.2d 169 (1983), *superseded on other grounds by* WIS. STAT. § 108.02(15)(k)16, *as recognized in National Safety Assocs.*, 199 Wis. 2d at 119)). "If a statute is liberally construed, 'it follows that the exceptions must be narrowly construed.'" *See McNeil v. Hansen*, 2007 WI 56, ¶10, 300 Wis. 2d 358, 731 N.W.2d 273. Nevertheless, we begin, as we must, by "first ascertain[ing] the plain meaning of th[e] statutory

language" as set forth above, and "[o]nly if the plain meaning analysis reveals ambiguity in the statutory language may we liberally or strictly construe that language." *See Amazon Logistics, Inc.*, 407 Wis. 2d 807, ¶26. Thus, if § 108.02(15)(k)16 is unambiguous, "we need not liberally construe that statutory subpart." *See Amazon Logistics, Inc.*, 407 Wis. 2d 807, ¶27.

¶27 WISCONSIN STAT. ch. 108 does not define "consumer products" (nor does it define "consumer" or "products" individually), making it necessary to consult a dictionary to aid in our determination of what constitutes a "consumer product" within Wisconsin's unemployment compensation law. *See Sanders*, 408 Wis. 2d 370, ¶14. First, however, we must determine whether the phrase "consumer products" has a "'common and approved usage'" or rather whether it has "'a peculiar meaning within the law,'" as the answer to this question will dictate whether we consult a non-legal dictionary or a legal dictionary. *See id.* (citations omitted).

¶28 Although non-legal dictionaries generally do not define the phrase "consumer product," "[w]e are not convinced" that this renders the phrase "a special or technical term" requiring that we resort to a legal dictionary. *See McKellips*, 369 Wis. 2d 437, ¶32 (explaining that the phrase "computerized communication system" is not inherently "a 'legislative term of art'" simply because non-legal dictionaries do not define the phrase).[13] Much like in *McKellips*, where our supreme court explained that the phrase "computerized communication system" was simply "three commonly understood words used

---

[13] Moreover, that different statutes define "consumer product" differently may suggest not that the phrase has a peculiar meaning in the law, but rather, that those statutes define the phrase to avoid having a common and ordinary understanding applied in a particular context.

together" that were individually defined in a non-legal dictionary, "consumer" and "products" are likewise two "commonly understood words used together[,]" both of which are defined in non-legal dictionaries. *See id.* Accordingly, "we can examine the dictionary definitions of each of these … common words to ascertain their meaning when used together." *See id*.

¶29 Turning first to "consumer," the Merriam-Webster Dictionary, The American Heritage Dictionary of the English Language, and The Oxford English Dictionary all offer similar definitions:

- "[O]ne that utilizes economic goods." (Merriam-Webster Dictionary);[14]

- "One that consumes, especially one that acquires goods or services for direct use or ownership rather than for resale or use in production and manufacturing." (The American Heritage Dictionary of the English Language);[15]

- "A person who uses up a commodity; a purchaser of goods or services, a customer." (The Oxford English Dictionary).[16]

In other words, a "consumer" is reasonably and easily understood to mean someone who purchases something for that individual's personal use.[17] "Product" likewise has a similar meaning across these three dictionaries:

---

[14] *Consumer*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/consumer (last visited June 25, 2025).

[15] *Consumer*, The American Heritage Dictionary of the English Language, https://ahdictionary.com/word/search.html?q=consumer (last visited June 25, 2025).

[16] *Consumer*, The Oxford English Dictionary, https://www.oed.com/dictionary/consumer_n?tab=meaning_and_use#8411261 (second definition) (last visited June 25, 2025).

- "[S]omething produced: especially: commodity" or "[S]omething (such as a service) that is marketed or sold as a commodity." (Merriam-Webster Dictionary);[18]

- "Something produced by human or mechanical effort or by a natural process, as: **a**. An item that is made or refined and marketed[.]" (The American Heritage Dictionary of the English Language);[19]

- "An object produced by a particular action or process; the result of mental or physical work or effort." (The Oxford English Dictionary).[20]

Based on these definitions, a "product" is generally, but not always, some type of physical item.

¶30    When we consider these definitions of "consumer" and "product" together, we can readily discern that "consumer products" as used in the statute unambiguously refers to physical or tangible items or objects an individual purchases for that individual's personal use in some manner. It is also apparent based on the definitions set forth above that "consumer products" is broad enough

---

[17] We note that these definitions of "consumer" reference "goods," which is a term that is listed as a synonym for "product." *See Product*, Thesaurus by Merriam-Webster, https://www.merriam-webster.com/thesaurus/product (last visited June 25, 2025).

[18] *Product*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/products (last visited June 25, 2025). "Commodity," in turn, has multiple definitions including "an economic good," "something useful or valued," "a good or service whose wide availability typically leads to smaller profit margins and diminishes the importance of factors (such as brand name) other than price," and "one that is subject to ready exchange or exploitation within a market." *See Commodity*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/commodity (last visited June 25, 2025).

[19] *Product*, The American Heritage Dictionary of the English Language, https://ahdictionary.com/word/search.html?q=product (last visited June 25, 2025).

[20] *Product*, The Oxford English Dictionary, https://www.oed.com/dictionary/product_n1?tab=meaning_and_use#28071189 (fifth definition) (last visited June 25, 2025).

to encompass those physical or tangible items or objects tied to (or that require) an incidental service such as installation or application of the product purchased. In other words, the mere fact that a physical or tangible product requires some type of incidental installation, application, or related service does not automatically transform the fundamental nature of the item into something that is not a "consumer product."

¶31 Although this definition of "consumer products" is admittedly broad in nature, this is largely so due to—and is, frankly, the natural consequence of—the unquantifiable number of products available to consumers. Stated differently, "consumer products" is a category that simply does not lend itself to a narrow definition. While LIRC suggests that such a broad interpretation reads "consumer products" out of the statute and violates the premise that we are to construe WIS. STAT. ch. 108 broadly, it is the legislature that chose to use an inherently broad term. That does not mean, however, that WIS. STAT. § 108.02(15)(k)16 is endlessly broad or that "consumer products" has no meaning, as other conditions must also be met before an individual's work is deemed to fall outside the definition of "employment" for purposes of Wisconsin's unemployment law—namely, in how and where these products are sold and in how the individual selling the products is paid. *See* § 108.02(15)(k)16. Thus, while what falls within the definition of "consumer products" is in and of itself an expansive list, the disqualification from UI benefit eligibility is nevertheless narrowed by these other qualifying requirements. If any one of these additional requirements is missing—for example, if the seller is paid by the hour—§ 108.02(15)(k)16 would not apply.

¶32 To the extent we conclude, based on the definitions set forth above, that the definition of "consumer products" is sufficiently broad to encompass incidental services such as installation or application that are tied directly to a

20

physical or tangible product, we are satisfied that the doors, windows, siding, and roofing Tarpey sold—which included incidental installation of those products—fall within the meaning of "consumer products" as set forth in WIS. STAT. § 108.02(15)(k)16. Each of these items are clearly products a customer purchases to use to protect the interior of a customer's home, and windows and doors are further used for additional purposes such as accessing the home and circulating or "airing out" the home under pleasant weather conditions. Had the legislature intended to exclude incidental services related to the installation of such products from falling within § 108.02(15)(k)16's exclusion, it certainly could have done so. It did not.

¶33 In concluding WIS. STAT. § 108.02(15)(k)16's plain language is unambiguous as it relates to the meaning of "consumer products," we necessarily reject multiple arguments LIRC raises on appeal. First, we need not consult external sources such as the legislative history and federal law LIRC relies upon heavily both on appeal and in its decision currently under review as "there is no need to consult extrinsic sources of interpretation" "[w]here statutory language is unambiguous[.]" *See Kalal*, 271 Wis. 2d 633, ¶46. Accordingly, LIRC's selective reliance on extrinsic sources such as *National Safety Associates*, which interpreted a different phrase in an earlier version of § 108.02(15)(k)16 that did not contain the language at issue here,[21] and *Cleveland Institute*, 787 F. Supp. 741, which turned to legislative intent in interpreting the meaning of "consumer

---

[21] *National Safety Associates* construed a prior version of WIS. STAT. § 108.02(15)(k)16 that excluded from "employment" services performed "[b]y an individual whose remuneration consists solely of commissions, overrides, bonuses or differentials directly related to sales or other output derived from in-person sales to or solicitation of orders from ultimate consumers, primarily in the home[.]" *See* § 108.02(15)(k)16 (1993-94); *National Safety Assocs.*, 199 Wis. 2d at 114.

products" as used in 26 U.S.C. § 3508 (the federal direct seller law) is both misplaced and unpersuasive.[22]

¶34     Second, we are likewise unpersuaded by LIRC's reliance on cases such as ***Linden v. Cascade Stone Co., Inc.***, 2005 WI 113, 283 Wis. 2d 606, 699 N.W.2d 189, and ***Van Sistine v. Tollard***, 95 Wis. 2d 678, 291 N.W.2d 636 (Ct. App. 1980), for the proposition that because Tarpey's sales included both a physical product and the installation of those physical products, we should apply the predominant purpose test in interpreting the meaning of "consumer products" and in determining whether Tarpey sold a "consumer product[]." Neither of those cases—nor the ones they relied upon—address statutory interpretation, which is the issue here. Rather, those cases considered the predominant purpose of the contracts at issue—whether the contract was predominantly one for goods or one for services—to determine the applicability of the economic loss doctrine, *see* ***Linden***, 283 Wis. 2d 606, ¶¶4-10, or whether the "mixed contract for goods and services is a sale of goods" for the purposes of applying the Uniform Commercial Code, *see* ***Van Sistine***, 95 Wis. 2d at 684.

---

[22] LIRC makes much of WIS. STAT. § 108.02(15)(k)16's legislative history—both in its briefs on appeal and in its decision that is currently under review—and its relation to the federal direct seller law. As we have explained, however, because we conclude that § 108.02(15)(k)16's plain language is clear and unambiguous, we need not consult the legislative history.

We also note that despite LIRC's reliance on ***Cleveland Institute of Electronics, Inc. v. United States***, 787 F. Supp. 741 (N.D. Ohio 1992), to support its reliance on legislative history in interpreting WIS. STAT. § 108.02(15)(k)16—legislative history it says indicates that § 108.02(15)(k)16 is modeled after the very federal statute at issue in ***Cleveland Institute***—LIRC interpreted § 108.02(15)(k)16 narrowly whereas the ***Cleveland Institute*** court reached the opposite conclusion and construed the term more broadly, stating that "the underlying purposes of [the federal direct seller law] are best served by interpreting the term 'consumer products,' as used in the statute, to include both tangible consumer goods and intangible consumer services." ***Cleveland Institute***, 787 F. Supp. at 750.

¶35    Third, to the extent LIRC concluded in its decision and argues on appeal that WIS. STAT. § 108.02(15)(k)16 is meant to track 15 U.S.C. § 3508, the federal direct seller law, such intention cannot be found in § 108.02(15)(k)16's plain language.    Had the legislature specifically intended that we construe § 108.02(15)(k)16 in lock-step with 15 U.S.C. § 3508 or that we at the very least turn to it as an interpretive aid, it could have included such language in the statutes.    It did not do so, however, despite clearly understanding that it *could* do so if it so desired.    *See* WIS. STAT. § 108.015 (stating that "[u]nless the department otherwise provides by rule, s. 108.02(26) shall be interpreted consistently with 26 U.S.C. 3306(b)").

¶36    For all of the foregoing reasons, we conclude that LIRC failed to follow the well-known framework for statutory interpretation[23] when it determined that "consumer products" must be defined as "products [that] are packaged and distributed for use, as delivered, by the purchaser" and that Tarpey did not sell "consumer products" within the statutory meaning.    Consequently, LIRC's interpretation and application of the plain-language meaning of "consumer products" as used in WIS. STAT. § 108.02(15)(k)16 was "without or in excess of its powers."    *See* WIS. STAT. § 108.09(7)(c)6.a.

---

[23] Interestingly, LIRC identifies the proper interpretative framework in its appellate brief despite having largely failed to apply that very framework in its decision.  Rather, LIRC simply confirmed that WIS. STAT. ch. 108 does not define "consumer products" and thereafter proceeded based on an apparent assumption that WIS. STAT. § 108.02(15)(k)16 is ambiguous—an assumption that is demonstrated by LIRC's immediate reliance on external sources such as federal law and legislative history in seeking to define "consumer products" without any prior meaningful engagement with the statutory text itself.  As we have explained herein, LIRC erred in doing so as there is no need to consult extrinsic sources in the absence of ambiguity.  *See State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶46, 271 Wis. 2d 633, 681 N.W.2d 110.

## IV. CONCLUSION

¶37    Although Wisconsin's UI laws are generally to be construed liberally, in enacting WIS. STAT. § 108.02(15)(k)16, the legislature made a policy-based decision to exclude certain types of work an individual performs from the definition of "employment" for purposes of UI benefit eligibility.  While it may seem arbitrary to exclude certain workers based simply on what they sell and how they are paid and where they perform the work, it is the legislature that is tasked with such policy-based decisions, and we must therefore "apply the policy the legislature has codified in the statutes, not impose our own policy choices—[because] to do otherwise would render this court little more than a super-legislature."  *See **Columbus Park Hous. Corp. v. City of Kenosha***, 2003 WI 143, ¶34, 267 Wis. 2d 59, 671 N.W.2d 633.  Because we conclude that Tarpey sold "consumer products" within the meaning of § 108.02(15)(k)16 and that § 108.02(15)(k)16 otherwise applies to the work Tarpey performed for Abby Windows, the circuit court did not err in reversing LIRC's order.  We affirm the circuit court's order.

*By the Court.*—Order affirmed.

Recommended for publication in the official reports.